[No. D014335. Fourth Dist., Div. One. July 16, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES SCOTT DALY, Defendant and Appellant.

## COUNSEL

Richard L. Schwartzberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Keith I. Motley and Louis R. Hanoian, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**HUFFMAN, J.**—James Scott Daly was involved in a crime spree that included kidnapping, two separate robberies, and a shootout with the police. A jury trial led to convictions of kidnapping (count 1), robbery (counts 2 and 3), attempted premeditated murder (counts 5, 7-9), unpremeditated attempted murder (count 4), and assault with a firearm on a police officer (count 6). Additionally, the firearm allegation as to each count was found true and Daly admitted the alleged serious felony prior following the jury verdict. Daly appeals, claiming the trial court abused its discretion in denying his request to sever the attempted murder counts from the robbery counts; insufficiency of evidence to support the kidnapping conviction; assault with a firearm on a police officer is not a lesser included offense of the charge of attempted murder; and that the court prejudicially erred in failing to give CALJIC instruction No. 2.72 regarding admissions. We agree with Daly as to the kidnapping charge which we will modify to attempted kidnapping. We reject Daly's remaining claims of prejudicial error and affirm.

### STATEMENT OF FACTS

The offenses involved in this case were committed on four separate dates. After a review of the record on appeal, we have chosen to adopt the

statement of facts contained in the respondent's brief as it sets forth a concise synopsis of the evidence:

"A. *Kidnaping of Kathleen Hill*

"On May 16, 1990, Kathleen Hill worked for Headquarters Companies located at 4380 La Jolla Village Drive in San Diego. [ ] Ms. Hill left work around 6:05 p.m. and walked to her car, which was parked in a structure at 4353 La Jolla Village Drive on the fourth level. [ ] As she reached her car Ms. Hill heard a door slam and saw appellant, James Scott Daly, running across the parking lot with a gun. [ ]

"Appellant pointed the gun, a small semi-automatic,[1] at Ms. Hill and said, 'You're coming with me.' [ ] Ms. Hill offered appellant her purse and the keys to her car, but appellant did not take either. [ ] Appellant seemed to be 'playing' with the slide of his gun. [ ] He grabbed Ms. Hill by the arm, put the gun in her face and dragged her across the parking lot to a van approximately 40 feet from her car. [ ]

"After reaching the van Ms. Hill broke away from appellant and ran toward the stairwell in a zig-zag pattern yelling as she ran. [ ] Appellant ran after Ms. Hill with the gun pointed at her. [ ] As she ran for the stairwell, Ms. Hill heard a clicking sound from the gun, as if the trigger had been pulled and the gun did not fire. [ ]

"Ms. Hill saw a woman in the courtyard below and yelled for her to call the police. [ ] As she ran for safety, Ms. Hill heard screeching tires in the parking structure. [ ]

"A tire damaged blue GMC van, registered to appellant, was found abandoned near the intersection of Genessee [*sic*] and Executive Drive. [ ] Ms. Hill was taken to the van's location by police and identified it as the van she was dragged to by appellant. [ ]

"Detective Thomas Jauregui was assigned to the Hill kidnaping case. [ ] Jauregui's investigation revealed that appellant was on parole at the time of the kidnaping. [ ] Detective Jauregui attempted, without success, to contact appellant at his residence. Jauregui left a business card asking appellant to contact him. [ ]

"Approximately two weeks later appellant called Detective Jauregui inquiring about the van. [ ] Jauregui told appellant to come to the police station

---

[1] In a footnote at this point the respondent states: "When appellant was arrested in June of 1990, he had a Walther PPK 9 millimeter pistol. [ ] Ms. Hill stated the gun appellant had on May 16, 1990, could have been the same gun. [ ]"

to talk about the Hill kidnaping and the van would be released. [ ] Appellant inquired if he would be arrested if he came to the police station and was told 'yes.' [ ] Appellant called Jauregui four or five other times and was told the same thing. Appellant said he 'was not going to go back to prison.' [ ] Appellant never came to the police station, voluntarily. [ ]

"B. *Robbery of Love's Barbecue Restaurant*

"On June 8, 1990, Michella Vieting was working as a hostess at Love's Barbecue Restaurant in Escondido. [ ] At approximately 6:30 p.m. appellant walked into the restaurant and asked for a job application. Ms. Vieting gave him one. [ ] A short time later Ms. Vieting noticed appellant talking to David, a host at the restaurant, when David turned to Ms. Vieting and said 'this man wants all of our money.' [ ] Appellant showed Ms. Vieting a gun which was tucked inside of his pants. [ ][2] The cash register was opened and money was placed in a bag. [ ]

"A waitress at the restaurant found a job application outside the front door. [ ] The job application was provided to the police and latent fingerprints were found on the application. [ ] A left thumb and right index print were identified as appellant's by latent fingerprint examiner Scott Peters of the San Diego Police Department. [ ]

"C. *Robbery of Chicago Brothers Pizza*

"On June 13, 1990, Tara Ponsot was a cashier at Chicago Brothers Pizza Restaurant at 4605 Mission Bay Drive in San Diego. [ ] At approximately 9:30 to 9:45 p.m., appellant came into the restaurant and asked for a job application. [ ] Appellant left and returned five minutes later asking about the business hours. [ ] Appellant returned yet again, said he was 'sorry to bother you' and lifted his jacket to reveal a gun tucked inside his pants. [ ][3] Appellant directed Ms. Ponsot to put all the money into a Burger King bag. When he got the money he left. [ ] The police were called. [ ]

"D. *Gunfight At The Western Shores Motel*

"Sergeant Reginald Frank of the San Diego Police Department was assigned on June 18, 1990, to investigate a series of robberies. [ ] Sergeant

---

[2]A footnote at this point states: "Ms. Vieting was not sure if the gun she saw was the gun recovered from appellant at the time of his arrest. She thought the gun she saw had a larger handle than the gun admitted at trial. [ ]"

[3]A footnote at this point states: "Ms. Ponsot stated that the gun recovered from appellant at the time of his arrest could have been the gun she saw. The handle (which is all she saw of the gun at the time of the robbery) was similar. [ ]"

Frank decided appellant, who was then on parole, fit the description of the robber he was seeking. [ ] When Frank contacted appellant's parole agent, he was informed appellant was in violation of his parole. [ ]

"The police began looking for appellant in the beach area. [ ] On June 21, 1990, a clerk at the Western Shores Motel on East Mission Bay Drive in San Diego told the police appellant had stayed at the motel three times in the last month, but was not currently a guest at the motel. [ ] Sergeant Frank was informed the next day that appellant was at Western Shores. [ ]

"Sergeant Frank, Detectives Rick Sullivan and Bill Nemec, along with uniformed officers Dean Way, Jay Brugman and Ed Erbe went to the motel. [ ] At approximately 8 p.m. Sergeant Frank, Detective Sullivan and Officer Way approached the door to room 19. [ ] The remaining officers covered the rear of the motel. [ ]

"Sergeant Frank knocked on the door to room 19, informed appellant that police were present and ordered him to come out of the room. [ ] Appellant looked through the curtain, stepped back from the window and said, 'Fuck you, come get me.' [ ] Two gunshots were fired through the window, and two more were fired through the door at the officers. [ ] Detective Sullivan fired two shotgun blasts through the door to provide cover for Sergeant Frank and Officer Way who found cover behind a blue Chevrolet Camaro. [ ][4] Detective Sullivan hid behind a Chevrolet Caprice. [ ] Sergeant Frank returned fire. [ ]

"For the next 40 to 45 minutes (until the S.W.A.T. team arrived) the shooting became sporadic. [ ] Appellant fired approximately 10 to 12 shots at Sergeant Frank, Detective Sullivan and Officer Way. [ ] After the initial four shots, appellant fired at sounds, when he heard the officers talking or heard their radios, or at muzzle flash when the police returned his fire. [ ] Detective Sullivan heard bullets buzz by him when he was behind the car and Sergeant Frank heard bullets strike the car which Sullivan was hiding behind. [ ]

"Sergeant Ralph Garcia was the gas team leader for the S.W.A.T. which took control of the scene. [ ] Sergeant Frank, Detective Sullivan and Officer Way were evacuated from the parking lot and Sergeant Garcia, along with Officers Daniel Blake and Daniel Vega took up a position behind the Camaro. [ ]

"While the siege was taking place, Reserve Officer Craig Fuller called appellant on the telephone to ask him to stop shooting. [ ] Appellant initially

---

[4] A footnote at this point states: "The Camaro was registered to appellant. [ ]"

responded by firing the gun near the phone. [ ] He said, 'Come in and get me, I'm ready, I'm going to take as many of you as possible before you kill me.' [ ] Appellant repeated the threat several times and told Fuller he was not going to go back to prison. [ ][5]

"At approximately 6:30 a.m., Sergeant Garcia's gas team deployed chemical agents into room 19 in order to force appellant out of the room. [ ] Appellant fired three rounds at the officers. Sergeant Garcia saw bullets hit the Camaro and heard one bullet whiz by. [ ]

"After his arrest, officers found a magazine which contained five bullets, each a hollow point designed to kill or injure. [ ] Thirteen shell casings were found in the room, dispersed all over the room. [ ] Damage from bullets was noted on the Camaro behind which Sergeants Frank and Garcia and Officers Way, Vega and Blake sought cover. [ ] The Caprice which shielded Detective Sullivan had a bullet hole in the windshield. A nearby Thunderbird had damage to the left front fender. A flat bed truck parked close by the officers also had damage from bullets. [ ] The bullet holes in the motel room door, had they hit an individual, would have struck a person of 'average height' in the groin or mid waist area. [ ]

"When interviewed at police headquarters by Detective Jack Sergojan, appellant stated, 'I just wanted to know did I at least plug Jauregui?' Appellant stated 'I was hoping that I got him at least once. He's the guy that caused all this.' [ ]"

## DISCUSSION

### I

### *Denial of the Severance Motion*

 Daly contends the trial court abused its discretion in denying his motion to sever charges.[6]

---

[5]A footnote at this point states: "The parties stipulated that for the limited purpose of showing intent and motive, appellant has been to state prison for several years. [ ]"

[6]On appeal, Daly alleges error on the part of the trial court in failing to sever the kidnapping charges from both the robbery and the attempted murder charges. The motion to sever filed in the trial court did not address the kidnapping charge and sought only to sever the attempted murder charges from the remaining charges in the information. Accordingly, we do not address the question of severance of the kidnapping count.

We begin our analysis by noting the charges in this case were properly joined in the accusatory pleading.[7] ██ Where charges are properly joined, the decision to grant or deny a motion to sever those charges is within the sound discretion of the trial court (*People* v. *Thomas* (1990) 219 Cal.App.3d 134, 140-142 [267 Cal.Rptr. 908]), which will not be reversed on appeal in the absence of a showing of clear abuse of that discretion. (*People* v. *Balderas* (1985) 41 Cal.3d 144, 171 [222 Cal.Rptr. 184, 711 P.2d 480]; *Frank* v. *Superior Court* (1989) 48 Cal.3d 632, 636 [257 Cal.Rptr. 550, 770 P.2d 1119]; *People* v. *Thomas*, *supra*, 219 Cal.App.3d at p. 141.)

The Supreme Court has established four principal criteria for evaluating a claim of prejudice from the denial of a severance motion. Courts should consider 1) whether evidence as to the joined charges was "cross-admissible," i.e., whether evidence of each of the joined charges would be admissible in a separate trial as to the other charge; 2) whether the joined charges are of such a nature that one or more of them is so inflammatory as to prejudice the jury's consideration of the remaining charge or charges; 3) whether a weak charge has been joined with a stronger case that provides "spillover" strength to the weak charge; and 4) whether a death penalty is sought for any one of the charged offenses. (*People* v. *Balderas*, *supra*, 41 Cal.3d 144, 173; *Frank* v. *Superior Court*, *supra*, 48 Cal.3d 632, 638-639.)

Relying principally on *Williams* v. *Superior Court* (1984) 36 Cal.3d 441, 448-450 [204 Cal.Rptr. 700, 683 P.2d 699], Daly argues the evidence was not "cross-admissible." While Daly acknowledges the existence of the other factors outlined in *Balderas*, it appears his principal reliance is upon the alleged lack of cross-admissibility.

Cross-admissibility of evidence is only one of the factors to be used in determining whether severance is required. Since *Williams*, the Supreme Court has made clear that all four factors outlined are relevant and must be considered in determining if any prejudice resulted from the joint trial. (*Frank* v. *Superior Court*, *supra*, 48 Cal.3d at p. 641; *People* v. *Walker* (1988) 47 Cal.3d 605, 622 [253 Cal.Rptr. 863, 765 P.2d 70].)

██ Respondent argues and we agree the evidence of the robberies and the attempted murders is connected. The prosecution theory was Daly fired

---

[7]Daly concedes, as he must, the joinder of offenses was proper based upon the facts known at the time of the motion and based upon Penal Code section 954. Penal Code section 954 provides in relevant part: "An accusatory pleading may charge two or more different offenses connected together in their commission, or different statements of the same offense or two or more different offenses of the same class of crimes or offenses, under separate counts, and if two or more accusatory pleadings are filed in such cases in the same court, the court may order them to be consolidated."

on police at the motel in order to avoid going back to prison for the robberies and the kidnapping for which he knew he was under investigation. Thus, the evidence of the robberies would be relevant to show motive and intent at the time of the attempted murders. (Evid. Code, § 1101, subd. (b).) Evidence of the attempted murders would be admissible to show consciousness of guilt as to the robberies and the kidnapping. Daly's principal ground of prejudice, lack of cross-admissibility, therefore fails.

Daly is no better served by the remaining *Balderas* criteria. No death penalty was sought for any of the charges; thus that factor is not applicable to this case. As to the remaining factors, nothing in the case appears particularly inflammatory. Certainly, kidnapping, robbery and shooting at police officers is violent, antisocial behavior. No one was injured, however, and we cannot say having robbery and attempted murder in the same case caused any more "prejudice" in that regard than a trial on the separate charges would ordinarily produce. Certainly, there is no "weak" or "strong" charge in this case. The evidence is straightforward and all charges were proved by substantial, if not overwhelming, evidence. Simply put, Daly has failed to show any prejudice in the joint trial of these charges.[8]

II

*Kidnapping*

■ Daly contends the evidence in support of the kidnapping conviction is insufficient as a matter of law because the victim was moved only 35 to 40 feet.

Daly was convicted of simple kidnapping, a violation of Penal Code section 207, subdivision (a).[9] Although there is no statutory distance over which a victim must be taken in order constitute kidnapping, the movement or asportation must be substantial. In *People v. Caudillo* (1978) 21 Cal.3d 562, 572 [146 Cal.Rptr. 859, 580 P.2d 274], the court said that kidnapping ". . . must involve a movement which is more than that which would be regarded as trivial, slight or insignificant." The "determining factor . . . is the actual distance of the victim's movements . . . ." (*Ibid.*)

Interpreting *Caudillo,* the California Supreme Court in *People v. Green* (1980) 27 Cal.3d 1, 66-68 [164 Cal.Rptr. 1, 609 P.2d 468] found that

---

[8]Without citation of authority, Daly contends Penal Code section 954.1, enacted in Proposition 115, is unconstitutional. As we do not rely on that section in resolving this case and since Daly can show no reason to strike the section, we decline to rule on its constitutionality.

[9]Penal Code section 207, subdivision (a) provides: "Every person who forcibly steals, takes, or arrests any person in this state, and carries the person into another country, state, or county, or into another part of the same county, is guilty of kidnapping."

asportation of a victim a distance of 90 feet was legally insufficient for kidnapping. We are compelled to follow the Supreme Court's decision.

In *Green*, the victim was taken to a remote area so the defendant could carry out his plan of murder. The Supreme Court found instructional and argument errors that related to the greater distance of the movement, some 20-plus miles, which made it unclear whether the jury had found the earlier distance was as a result of the requisite force for kidnapping. Once the victim arrived at the scene of the killing, the defendant required her to move a distance of some 90 feet at gunpoint to the location where he sexually assaulted and murdered her. The Supreme Court found unquestionably the victim was forced to walk the 90 feet to the place of her execution. It was therefore necessary for the court to determine if the 90 feet of forced travel under the circumstances was legally sufficient to support a kidnapping. The Supreme Court determined that it was not.

We cannot distinguish our case from *Green*. In this case, Daly moved the victim approximately 40 feet across a parking structure in his unsuccessful effort to get her into his van. The entire movement was within the parking structure and we cannot say on this record the risk of harm to the victim was increased by the movement of this short distance. (Cf., *People* v. *Stender* (1975) 47 Cal.App.3d 413, 421-423 [121 Cal.Rptr. 334].) Accordingly, we must find the evidence of asportation legally insufficient to support a conviction for kidnapping.

Such finding does not, however, end the discussion as to count 1. It is undisputed in this record that Daly forced a woman at gunpoint to move across a parking lot to his van. He was unsuccessful in getting her into his van because the victim broke free and ran away from him. ▮ Our holding the distance traveled before her escape is insufficient for the crime of kidnapping does not, however, eliminate the crime of attempt to kidnap (Pen. Code, §§ 664/207) which was given to the jury as a lesser included offense of count 1.

We are authorized under Penal Code section 1181, subdivision 6, to reduce a conviction to the lesser offense where the evidence shows the defendant is not guilty of the greater offense but is in fact guilty of a lesser offense. (*People* v. *Bassett* (1968) 69 Cal.2d 122, 148 [70 Cal.Rptr. 193, 443 P.2d 777].) The conviction of kidnapping in count 1 must be modified to reflect the offense of attempted kidnapping and the sentence modified accordingly.

## III

### *The Assault Conviction*

█ Daly contends his conviction for assault with a firearm on a police officer (count 6) must be reversed because it was erroneously presented to the jury as a lesser included offense of attempted murder originally charged in that count.

Daly argues, and the Attorney General correctly concedes, assault with a firearm on a police officer is not a lesser included offense of attempted murder. (*People* v. *Young* (1981) 120 Cal.App.3d 683, 689-690 [175 Cal.Rptr. 1].) The Attorney General's response, however, notes Daly failed to object to the instruction and embraced the assault charge during his final argument. We agree with the response. Daly cannot object to his assault conviction on this record.

Although not a lesser included offense, the assault charge is a lesser related offense under the facts of this case. (See *People* v. *Geiger* (1984) 35 Cal.3d 510, 526 [199 Cal.Rptr. 45, 674 P.2d 1303, 50 A.L.R.4th 1055].) A defendant cannot be convicted of a lesser related offense over his objection because the defendant would not have received adequate notice since the offense would not be included within those formally charged. (*People* v. *Toro* (1989) 47 Cal.3d 966, 973 [254 Cal.Rptr. 811, 766 P.2d 577].) Where a defendant consents or acquiesces in the giving of a lesser related offense instruction, the defendant may lawfully be convicted of such offense. "However, an exception to this rule [notice requirement] has long been recognized in cases where a defendant expressly or impliedly consents to have the trier of fact consider a nonincluded offense: 'Since a defendant who requests or acquiesces in conviction of a lesser offense cannot legitimately claim lack of notice, the court has jurisdiction to convict him of that offense.' [Citations.]" (*Ibid.*)

The Supreme Court's holding in *Toro* is controlling on the facts of this case. In *Toro* the defendant was aware of the instruction given by the court and had ample time to object, yet failed to do so. The lesser related offense conviction was upheld. Similarly in this case, defense counsel was present during the jury instruction conference when the court indicated it would give this instruction.[10] Daly offered no objection to the trial court's decision to give the instruction and, during closing argument, defense counsel told the jury the shooting by Daly at the motel was at most an assault with a firearm

---

[10]Unfortunately, the trial court failed to include a notation as to who requested which instruction. Although the instructions are correctly stamped with the terms plaintiff or

on a police officer. It is clear in this record Daly acquiesced in and sought the benefit of the lesser related offense instruction. He cannot now complain that he received such benefit.

## IV

### *Instructional Error*

■ The trial court refused to give Daly's requested jury instruction CALJIC No. 2.72, which requires that evidence of corpus delicti be proved independent of a defendant's admissions.[11] The Attorney General concedes the court's failure to give the requested instruction was error, but contends the error was harmless. We agree and find the failure to instruct to be harmless error.

Corpus delicti of a crime consists of 1) the fact of the injury, loss, or harm, and 2) the existence of a criminal agency as its cause. (1 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) § 136, p. 152.) The admissions at issue in this appeal relate to the attempted murder charges, which admissions Daly contends could have been used to prove his intent and motive at the time of the offense. We note first motive is not an element of any crime and is certainly not a part of corpus delicti. (1 Witkin & Epstein, *op. cit. supra*, § 100, p. 119; CALJIC No. 2.51.) Nor is state of mind an element of corpus delicti. (*People* v. *McGlothen* (1987) 190 Cal.App.3d 1005, 1014 [235 Cal.Rptr. 745]; *People* v. *Manson* (1977) 71 Cal.App.3d 1, 25 [139 Cal.Rptr. 275].)

The corpus delicti of attempted murder was proved in this case by eyewitness testimony. The observations of the witnesses and the physical evidence establish that shots were fired at or in the direction of the police officers who were victims of the attempted murder charges. No issue was raised as to the criminal agency element of corpus delicti. Omission of CALJIC No. 2.72 is harmless where the corpus delicti is clearly established by evidence independent of the admissions. (*People* v. *Beagle* (1972) 6 Cal.3d 441, 456 [99 Cal.Rptr. 313, 492 P.2d 1].) The trial court's failure to give the requested instruction in light of the overwhelming independent

---

defendant available for checking, the court failed to make any notation on the instructions. Such notation may well have obviated the necessity to review this issue on appeal.

[11]The requested instruction CALJIC No. 2.72 reads as follows: "No person may be convicted of a criminal offense unless there is some proof of each element of the crime independent of any [confession] [or] [admission] made by [him] [her] outside of this trial. [¶] The identity of the person who is alleged to have committed a crime is not an element of the crime [nor is the degree of the crime]. Such identity [or degree of the crime] may be established by [a] [an] [confession] [or] [admission]."

evidence establishing corpus delicti is plainly harmless. (*Ibid.*; *People* v. *Watson* (1956) 46 Cal.2d 818 [299 P.2d 243].)

## DISPOSITION

The conviction of kidnapping in violation of Penal Code section 207 (count 1) is modified to attempted kidnapping (Pen. Code, §§ 664/207). The trial court is instructed to modify the abstract of judgment to reflect a sentence of 10 months for the violation of Penal Code sections 664/207, subdivision (a) (one-third of the midterm of two and one-half years). The abstract of judgment should reflect a total determinate sentence of 37 years 2 months. In all other respects the judgment is affirmed.

Kremer, P. J. and Nares, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 30, 1992.