Filed 6/25/13  P. v. Jaramillo CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G046632 |
| v. | (Super. Ct. No. 10NF1087) |
| HECTOR DELIO AGUILAR JARAMILLO, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, John Conley, Judge.  Affirmed.

Thomas Owen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Steve Oetting and Michael Pulos, Deputy Attorneys General, for Plaintiff and Respondent.

\*      \*      \*

Defendant Hector Delio Aguilar Jaramillo was convicted of the murder of Roberto Martinez. Defendant challenges his conviction on appeal. We affirm.

First, defendant argues there was insufficient evidence to support his conviction. We disagree. There was sufficient evidence to support the conviction, based on DNA found at the scene, the testimony of a blood spatter expert, and the similarity between defendant's shoe size and the size of bloody shoe prints found at the scene.

Second, defendant argues the trial court erred by failing to allow evidence of a third party's culpability in the murder. We find no abuse of discretion; defendant did not offer any evidence that linked a third party to the perpetration of the murder.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

On October 31, 2006, Martinez was murdered in his home. He was stabbed more than 50 times in the head, neck, torso, and extremities. Martinez also suffered blunt force trauma to his face and head.

A black latex glove was found at the scene. Defendant could not be excluded as a contributor of DNA found on the inside of the glove; fewer than one in four billion people would have the same profile as the DNA found on the glove. Although the prosecution's DNA evidence expert was not able to say with 100 percent certainty that the DNA on the glove was defendant's, she did testify that, statistically, only one other person in the world besides defendant could have contributed the DNA. The outside of the glove was covered with Martinez's blood. The prosecution's blood spatter expert opined the glove was worn during the commission of the murder.

A hair found on the black glove was identified as belonging to Martinez. Additional DNA was found on a wall inside the home, mixed with Martinez's blood; defendant could not be excluded as a contributor of that DNA.

2

Two different sets of bloody shoe prints were found at the scene; neither belonged to Martinez. One set of shoe prints was from an athletic shoe between sizes eight and eight and a half, but which could have been between sizes seven and a half and nine. A dress shoe or boot made the other set of shoe prints, and was a size seven or eight. Shoes found at defendant's home were consistent in size with the shoes that made the bloody shoe prints.

Defendant had lived at Martinez's home for six or seven months in 2005; he moved out in January or February 2006. Defendant testified he did not go back to Martinez's house after he moved out. Defendant further testified that, while living at Martinez's house, he had worn gloves while helping in the yard and around the house.

Defendant testified that he probably went to Mexico, after getting off work on the night of the murder, to visit his mother's grave. Defendant returned to the United States on November 7, 2006.[1]

At the time of the murder, Martinez was in a relationship with the sister of defendant's then wife. Defendant, defendant's ex-wife, and one of her sisters (though not the sister who had been in a relationship with Martinez) testified that there were no problems between defendant and Martinez.

Defendant was charged with a single count of murder. (Pen. Code, § 187, subd. (a).) A jury found defendant guilty, and the trial court sentenced him to 25 years to life in prison. Defendant timely appealed.

---

[1] Although defendant claimed he traveled to Mexico about two dozen times each year, records of the United States Customs and Border Protection showed November 7, 2006, as defendant's only entry into the United States from Mexico in 2006. Defendant made one entry into the United States in 2004, three entries in 2005 (all of which were on the same day), four entries in 2007, two entries in 2008, and six entries in 2009.

3

I.

*SUFFICIENCY OF THE EVIDENCE*

Defendant contends there was insufficient evidence to support his conviction for the murder of Martinez. "When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] . . . We presume in support of the judgment the existence of every fact the trier of fact reasonably could infer from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.] A reviewing court neither reweighs evidence nor reevaluates a witness's credibility. [Citation.]" (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.)

DNA consistent with that of defendant was identified on the inside of a glove found at the scene of the murder, while Martinez's blood was identified on the outside of that same glove. A blood spatter expert who examined the glove testified the amount and pattern of the blood on the glove were consistent with a direct transfer, rather than a secondary transfer, of blood; in his opinion, the glove was worn during the commission of the murder. Defendant could not be excluded as the source of additional DNA found on a wall in the room where the murder took place, which was mixed with Martinez's blood.

Shoe print evidence was found at the scene. Two distinct shoe print impressions were found, neither of which matched Martinez's shoes. One shoe print was of an athletic shoe, sized eight or eight and a half, but which could have been between

4

sizes seven and a half and nine. The other shoe print was from a dress shoe or boot, and was sized between seven and eight. None of the shoes located at defendant's home matched the shoe prints found at the scene. Defendant testified he wore a size seven shoe; he could not explain why the police found between four and six pairs of shoes in his home that were sized eight or eight and a half. Thus, defendant's shoe size was the same size as either of the distinct sets of bloody shoe prints found at the scene.

Based on the evidence before it, the jury could reasonably conclude that defendant was wearing the black glove while killing Martinez; this would be consistent with the evidence regarding the DNA found inside the glove, Martinez's blood being on the outside of the glove, and one of Martinez's hairs being found on the glove. Given the conflicting evidence regarding the size of defendant's shoes, the jury could have concluded defendant left either one of the sets of bloody shoe prints at the scene. DNA evidence placed defendant inside the room in which the murder was committed, which further connected defendant to the murder. That DNA was mixed with Martinez's blood. Defendant's trip to Mexico, combined with his testimony about how often he made such trips (which was contradicted by the United States Customs and Border Protection records), was circumstantial evidence of defendant's guilt, which the jury could also consider. (See *People v. Bradford* (1997) 14 Cal.4th 1005, 1054-1055.)

Defendant argues that the evidence of the manner in which the crime was committed was inconsistent with his participation in it, given the testimony of his ex-wife and former sister-in-law that defendant and Martinez did not have a problematic relationship. Defendant further argues no explanation was provided by the prosecution why defendant would have killed Martinez. Motive, however, is not an element of murder, and the prosecution had no obligation to provide such evidence. (*People v. Whisenhunt* (2008) 44 Cal.4th 174, 218; *People v. Daly* (1992) 8 Cal.App.4th 47, 59;

5

CALCRIM No. 370.)  Therefore, the lack of proof of a motive and the lack of any prior problems between defendant and Martinez do not require reversal of the judgment.[2]

## II.

### *DID THE TRIAL COURT ERR IN EXCLUDING TESTIMONY ABOUT THIRD PARTY CULPABILITY?*

Before trial, defendant filed a motion to permit introduction of evidence of a third party's culpability in the murder of Martinez.  In an offer of proof, defendant asserted that four days before the murder, Martinez was involved in an automobile accident.  Martinez fled the scene.  The driver and three passengers in the car that Martinez had hit chased Martinez and eventually caught him.  Those individuals cursed at Martinez and took his wallet.  A police officer called to the scene made the occupants of the other car return Martinez's wallet.  One of the passengers in the other car, Jonathan C., had a history of criminal conduct, including a residential burglary where he allegedly held a woman down and threatened her with a knife.  Jonathan wore a size eight-and-a-half shoe.  Defendant sought to introduce this evidence at trial as proof that Jonathan, not defendant, murdered Martinez.  The trial court excluded the evidence.

"A criminal defendant may introduce evidence of third party culpability if such evidence raises a reasonable doubt as to his guilt."  (*People v. Abilez* (2007) 41 Cal.4th 472, 517.)  "'[T]o be admissible, evidence of the culpability of a third party offered by a defendant to demonstrate . . . a reasonable doubt . . . must link the third person either directly or circumstantially to the actual perpetration of the crime.'"

---

[2]  The jury was instructed with CALCRIM No. 370, as follows:  "The People are not required to prove that the defendant had a motive to commit the crime . . . charged. In reaching your verdict you may, however, consider whether the defendant had a motive. [¶] Having a motive may be a factor tending to show that the defendant is guilty.  Not having a motive may be a factor tending to show the defendant is not guilty."  The jury presumably considered any lack of motive in reaching its verdict, but determined that did not override the evidence of defendant's guilt.

(*People v. McWhorter* (2009) 47 Cal.4th 318, 367.) "'"'[M]ere motive or opportunity to commit the crime in another person, without more, will not suffice to raise a reasonable doubt about a defendant's guilt.'"'" (*People v. Hartsch* (2010) 49 Cal.4th 472, 496.) We review the trial court's decision to exclude evidence of third party culpability for abuse of discretion. (*People v. Elliott* (2012) 53 Cal.4th 535, 580-581.)

In this case, we find no abuse of discretion in the exclusion of the evidence regarding Jonathan. That Jonathan had been involved in a traffic accident with Martinez four days before the murder, and wore shoes similar in size to a bloody print found at the murder scene, is not enough to link Jonathan to the actual perpetration of the murder, and therefore does not raise a reasonable doubt as to defendant's guilt. Our Supreme Court has found no abuse of discretion in excluding third party culpability evidence in many cases where the evidence of a link to the crime was greater than the evidence here. (See *People v. Page* (2008) 44 Cal.4th 1, 35-36 [murder committed while engaged in commission of lewd act against a child under age 14; trial court properly excluded evidence that (1) resident of same apartment complex in which the defendant and the victim lived was frequently in the company of children, would put his arms around children while teaching them to play tennis, and had asked 11-year-old female apartment complex resident to accompany him to the desert around the time the victim disappeared, and (2) two days after the victim disappeared, a man was arrested for exposing himself and masturbating near the apartment complex]; *People v. McWhorter*, *supra*, 47 Cal.4th at pp. 372-373 [trial court correctly excluded evidence that the victims' ex-husband and father was a violent man, of whom the victims were afraid, who wanted to end child support payments, and who regularly wore cowboy boots consistent with a bloody print found at the scene]; *People v. Kaurish* (1990) 52 Cal.3d 648, 684-685 [trial court properly excluded evidence that the victim and her mother stole money and other property from Jay-Jay Sheffner, and bragged about it, and that Sheffner, who had a

7

history of child sexual molestation, had vowed to get even; the 12-year-old victim had been sexually assaulted and murdered].)

## DISPOSITION

The judgment is affirmed.


FYBEL, ACTING P. J.

WE CONCUR:


IKOLA, J.


THOMPSON, J.