Filed 5/27/21  P. v. Rotkin CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ALEKSANDR ROTKIN,<br><br>    Defendant and Appellant. | A158747<br><br>(San Francisco County<br>Super. Ct. Nos. 231502,<br>19007576) |

Aleksandr Rotkin appeals from his conviction for attempted kidnapping of his girlfriend, Y.H., and their son, Adam R. (Pen. Code, §§ 664, 207, subd. (a))[1] and false imprisonment of Y.H. and Y.H.'s mother, B.L. (§ 236).  Rotkin seeks reversal on the grounds that:  (1) the trial court erred in admitting 911 calls and related trial testimony from witnesses expressing speculative opinions; (2) the trial court improperly instructed on the asportation element for the attempted kidnapping of Adam R.; (3) there was insufficient evidence that Rotkin attempted to move either Y.H. or Adam R. a substantial distance to support his attempted kidnapping convictions; (4) there was insufficient evidence of two other elements to support his attempted kidnapping

---

[1] Undesignated statutory references are to the Penal Code.

1

conviction of Adam R.; and (5) the jury did not decide the necessary elements for the attempted kidnapping of Adam R.

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The following is a brief summary of some of the factual and procedural background in this case, which we set out to provide context to the issues raised on appeal. Additional facts are included in our legal discussion.

Rotkin was charged by information with two counts of attempted kidnapping (§§ 664, 207, subd. (a)); one count of felony false imprisonment (§ 236); one count of misdemeanor false imprisonment (§ 236); one count of child endangerment (§ 273a); and two counts of obstructing an officer (§ 69, subd. (a)).

At trial, the prosecution presented surveillance video, witness testimony, and footage from the body-worn cameras of police officers responding to an incident on a residential street in San Francisco. Surveillance video from a neighboring house showed that, around 10:55 a.m. on May 15, 2019, Y.H. came out of her mother's house and ran into the street to flag down a passing white van. A neighbor's son, Jesus A., testified that Y.H. then ran across the street into their garage, seeming "very frightened" and "scared." Y.H. asked if she could hide there, but Jesus A. said no because he did not know what was going on. The surveillance video showed Y.H. returning to her mother's house.

The surveillance video showed that, around 11:03 a.m., Y.H. came back out of the house, this time holding Adam R. on the sidewalk and walking towards an adjacent neighbor's house. Rotkin also came out of B.L.'s house, walked to Y.H., and appeared to hold and push Y.H. down the street and away from B.L.'s house. At one point, B.L. exited her house and Rotkin

appeared to grab B.L. while also holding Y.H.  Police officers arrived a few minutes later.

San Francisco Police Officers Richard Trujillo, Maria Peregrina, and Roderick Suguitan responded to the scene and testified at trial.  The body-worn camera footage from Officer Trujillo was admitted into evidence and played for the jury.  The footage showed that, when Officer Trujillo asked Rotkin and Y.H. to move out of the street and onto the sidewalk, Rotkin responded:  "My car is that way."  The body-worn camera footage from Officer Peregrina was also admitted into evidence and played for the jury.  It depicted Rotkin holding a car key.  Officer Peregrina testified that she believed Rotkin "had his car keys or keys or someone's keys in his hands."  Officer Suguitan testified that he located Rotkin's vehicle down the street, and measured the distance to be approximately 189 feet from B.L.'s house.  He also testified that he measured the distance between B.L.'s house and the adjacent neighbor's house to be approximately 33 feet.

Rotkin testified on his own behalf as follows.  Rotkin and Y.H. had been dating for approximately two years at the time of trial, and their son Adam R. was born in March 2018.  Y.H. moved to her mother's house after Adam R. was born so that her mother could help with the baby.  On the morning of the incident, he and Y.H. were arguing about Adam R.  Y.H. then ran into the street and almost got hit by a car, which worried him.  When Y.H. went outside again, this time with Adam R., he was afraid she would run out onto the street and tried to get her to come back inside B.L.'s house.  When he went outside to get Y.H., he took her keys and cell phone with him.  On cross-examination, Rotkin testified that he was not sure whether the car key he was holding when the police arrived was his car key, or Y.H.'s car key.

The jury found Rotkin guilty on both counts of attempted kidnapping and both counts of false imprisonment. The jury found Rotkin not guilty of child endangerment or obstructing an officer. On the attempted kidnapping and felony false imprisonment counts, the court sentenced Rotkin to five years of formal probation, with imposition of sentence suspended, and one day of county jail, with credit of one day already served. On the misdemeanor false imprisonment count, the court sentenced Rotkin to 297 days in county jail, with credits of 297 days already served.

## DISCUSSION

Rotkin makes five primary arguments in this appeal. First, Rotkin argues the court made evidentiary errors in admitting 911 calls and related trial testimony that expressed speculative opinions from neighbor witnesses. Second, Rotkin argues the court made an instructional error on the asportation element for the attempted kidnapping of Adam R. Third, Rotkin argues there was insufficient evidence that he attempted to move either Y.H. or Adam R. a substantial distance to support his attempted kidnapping convictions. Fourth, Rotkin argues there was insufficient evidence of two other necessary elements for his attempted kidnapping conviction of Adam R. Fifth, Rotkin argues the jury did not decide these two necessary elements for the attempted kidnapping of Adam R. We address each argument in turn.

## I.

### *Evidentiary Error Argument*

Rotkin argues the court made evidentiary errors in admitting certain 911 calls and related testimony at trial because they expressed speculative opinions from neighbor witnesses Christina M., Hai Bin F., and Jesus A. We review the court's evidentiary decisions for abuse of discretion. (*People v. Seumanu* (2015) 61 Cal.4th 1293, 1311.) If a party establishes an abuse of

4

discretion, we then determine whether he or she suffered any possible prejudice. (*People v. Wallace* (2008) 44 Cal.4th 1032, 1058.)

    A.    Additional Facts

Prior to trial, Rotkin moved in limine to exclude, among other things, (1) any opinion testimony regarding Rotkin's guilt, whether he committed any of the offenses charged, or the definitions of those offenses; (2) all mentions of " 'kidnap' " or "kidnapping" in 911 calls related to the incident; and (3) all speculative statements made by Jesus A. in his 911 call. The court granted the motion as to any opinion testimony regarding Rotkin's guilt or innocence. The court allowed the 911 calls to be played as is, but with an instruction to the jury that the term "kidnap" was being used colloquially, not in accordance with its legal definition. The court granted the motion as to Jesus A. in part, stating that Jesus A. could testify as to what he observed, but striking any statement from the 911 call where Jesus A. speculated as to "future activity."

At trial, Christina M. testified that she lived two houses down from B.L.'s house. As Christina M. was leaving her house, Y.H. approached her and asked her to call 911. Christina M.'s 911 call was admitted into evidence without objection, and played for the jury. During the 911 call, Christina M. stated: "My neighbor needs help. Her husband or her partner is harassing her and yelling at her here outside and she asked me to call the police. [¶] . . . [¶] And she has a baby with her." When the dispatcher asked if the man was "trying to take the baby," Christina M. responded: "Yeah. I don't know. They're having an argument. I don't know what's going on. I just walked out of my house."

Hai Bin F. testified that she also lived on the same street as B.L.'s house and called 911 when she saw a man struggling with a woman holding a

5

baby. Hai Bin F.'s 911 call was admitted into evidence without objection, and played for the jury. When the dispatcher asked what the man was doing, Hai Bin F. responded: "Try to grab the baby and the—the lady just hold the baby." When the dispatcher later asked what the man was doing to the woman, Hai Bin F. responded: "He grab—he—he try to grab the baby but the—the lady just hold the baby."

When the prosecutor asked Hai Bin F. what she saw while on the phone with 911, Hai Bin F. testified that she saw "the man trying to grab the baby from the female." Defense counsel did not object. When the prosecutor asked Hai Bin F. to describe what the man was doing to the woman, Hai Bin F. testified that she saw the man "[g]rabbed baby and also hold onto the woman." Defense counsel objected to this testimony as speculative, but the court overruled the objection as "a lay description of what [Hai Bin F.] observed." On cross-examination, the defense counsel then asked Hai Bin F. a series of questions as to whether she assumed the man was a "bad" person because the woman was crying. Hai Bin F. responded that she did.

Jesus A. testified that he called 911 after Y.H. asked him to hide her. Jesus A.'s 911 call was admitted into evidence without objection, and played for the jury. When the dispatcher asked what Jesus A. was seeing, he responded: "Well, they're playing a tug-of-war with a little child. A tug-of-war. And I'm afraid it could escalate to—to ah, bigger thing." Jesus A. stated that the man calmed down because another neighbor was calling 911, and that "if there wasn't any—anybody pressing, it could have been escalation probably." Jesus A. then stated that the man was "really getting very ah, aggressive." When the dispatcher asked what was happening, Jesus A. responded: "Oh man. I think he's trying to kidnap her or something." When the dispatcher asked if he saw any weapons, Jesus A. responded: "No

6

weapons. No, he's trying to take her to—no, he's trying to take her to his car." Jesus A. stated that the man was "[d]ragging" both the woman and child "against their will." After the 911 call was played, the court instructed the jury that Jesus A. was using the word "kidnap" in the "everyday ordinary meaning" and not in the "legal definition of the word."

When the prosecutor asked Jesus A. why he thought the man was trying to kidnap the woman, he responded: "Well, because I did observe— during all this scenario, I did observe him and say, 'Come with me. It's my baby. Come with me to my vehicle.' He was trying—not drag them, but physically taking the female and the baby to his vehicle. At that time, I didn't know what vehicle it was." Defense counsel did not object. On cross-examination, Jesus A. testified that the man used the word "car" or "vehicle," but could not remember exactly which word. Jesus A. stated: "Car or vehicle, to me, is the same thing."

B.     Analysis

Rotkin argues that admission of the 911 calls from Christina M., Hai Bin F., and Jesus A., as well as related trial testimony from Hai Bin F. and Jesus A., was improper because it expressed the witnesses' speculative opinions. The People contend first that Rotkin forfeited these evidentiary objections by not raising them below, but that the arguments nonetheless fail on the merits.

As to the 911 calls from Christina M. and Hai Bin F., and Hai Bin F.'s testimony regarding her assumption that the man was "bad" because he made the woman cry, we agree that Rotkin's arguments have been forfeited. " 'A party desiring to preserve for appeal a challenge to the admission of evidence must comply with the provisions of Evidence Code section 353, which precludes reversal for erroneous admission of evidence unless: "There

7

appears of record an objection to or a motion to exclude or to strike the evidence that was timely made and so stated to make clear the specific ground of the objection or motion." ' " (*People v. Ramos* (1997) 15 Cal.4th 1133, 1171.)  Defense counsel did not object to the admission of Christina M. and Hai Bin F.'s 911 calls, and did not move to exclude or strike Hai Bin F.'s testimony on cross-examination regarding her assumption.  None of this evidence was covered by Rotkin's motions in limine, as it did not include the terms "kidnap" or "kidnapping," and did not involve any opinion as to Rotkin's guilt, commission of the charged offenses, or definitions of those offenses.

Rotkin argues that even if forfeited, these issues are properly presented on appeal as an ineffective assistance of counsel claim.  The test for ineffective assistance of counsel requires a criminal defendant to establish both that his or her counsel's performance was deficient and that he or she suffered prejudice.  (*Strickland v. Washington* (1984) 466 U.S. 668, 687.)  "[I]f the record sheds no light on why counsel acted or failed to act in the challenged manner, we must reject the claim on appeal unless counsel was asked for an explanation and failed to provide one, or there could be no satisfactory explanation for counsel's performance."  (*People v. Castillo* (1997) 16 Cal.4th 1009, 1015.)  As the record here sheds no such light, and defense counsel's decision not to object to this evidence as speculative may have resulted from a choice within range of reasonable competence, we reject Rotkin's ineffective assistance of counsel claim.

As to the 911 call and related testimony from Jesus A., as well as Hai Bin F.'s testimony that defendant had grabbed Adam R., we address the merits of Rotkin's arguments because they were preserved through the motions in limine and objection at trial.  Rotkin argues that this evidence

should have been excluded because it included improper lay opinion testimony from Jesus A. and Hai Bin F. regarding Rotkin's intent to kidnap, as well as improper lay opinion testimony from Jesus A. regarding whether Rotkin had committed the crime of kidnapping.

A lay witness may express an opinion, but only where (1) rationally based on his or her perception; and (2) helpful to a clear understanding of his or her testimony. (Evid. Code, § 800.) Such circumstances may arise when a witness's impression of what he or she observes regarding the demeanor of another person rests on "subtle or complex interactions" involving that person. (*People v. Hinton* (2006) 37 Cal.4th 839, 889.) While a lay witness generally may not give an opinion about another person's state of mind, he or she "may testify about objective behavior and describe behavior as being consistent with a state of mind." (*People v. Chatman* (2006) 38 Cal.4th 344, 397.) A witness may not, however, express an opinion as to the guilt or innocence of the defendant, or whether a crime has been committed. (*People v. Torres* (1995) 33 Cal.App.4th 37, 47.) Such opinions are inadmissible because they are of no assistance to the trier of fact: the trier of fact is just as competent as the witness to draw those conclusions. (*Ibid.*)

Here, Jesus A. stated in his 911 call that he saw a man engaged in a "tug-of-war" with a woman and was trying to take her to his car, and later testified that he heard the man direct the woman to his vehicle. He stated that he was afraid of the incident escalating, but that Rotkin appeared temporarily calmer when another neighbor called 911. Hai Bin F. testified that the man "[g]rabbed baby and also hold onto the woman." These statements were permissible because they were rationally based on Jesus A. and Hai Bin F.'s observations, and described Rotkin's objective behavior. (*People v. Chatman*, *supra*, 38 Cal.4th at p. 397.)

9

Jesus A. also stated in his 911 call that he thought the man was "trying to kidnap her or something," while observing that the man was dragging a woman and child to his vehicle. This statement was permissible because it tied a state of mind (trying to kidnap Y.H.) with an objective behavior (moving Y.H. and Adam R. toward a vehicle). (*People v. Chatman*, *supra*, 38 Cal.4th at p. 397.) Even if admission of this portion of the 911 call was in error, any such error was harmless. (*People v. Watson* (1956) 46 Cal.2d 818, 836.) After playing the 911 call, the court instructed the jury that Jesus A.'s use of the term "kidnap" was colloquial, not legal. The instruction adequately addressed any concern that this testimony constituted an improper lay opinion on whether the crime of kidnapping had been committed. (See *People v. Thompson* (2010) 49 Cal.4th 79, 130 [determining that jury admonishment regarding lay opinion testimony addressed concerns about speculative comments by witness].)

In sum, we conclude that the court did not abuse its discretion in admitting the 911 call and related testimony from Jesus A., or the testimony from Hai Bin F.

## II.

### *Instructional Error Argument*

Rotkin argues that the court made an instructional error for the attempted kidnapping of Adam R. by omitting a necessary instruction on the element of "asportation," i.e., that defendant moved the victim a substantial distance. "We review challenges to the propriety of jury instructions in correctly stating the relevant law under the de novo standard of review." (*Collins v. Navistar, Inc.* (2013) 214 Cal.App.4th 1486, 1500.) The initial step of our inquiry is to determine whether the omission was instructional error. (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 573.) If we determine

10

there was an instructional error, we must then assess whether the erroneous instruction was prejudicial and thus warrants reversal. (*Id.* at p. 574.)

A.    Additional Facts

For the attempted kidnapping of Adam R., the court instructed the jury with CALCRIM Nos. 460 and 1201. Pursuant to CALCRIM No. 460, attempted kidnapping requires the prosecution to prove that defendant (1) took a direct but ineffective step toward committing kidnapping; and (2) intended to commit kidnapping. The court directed the jury to CALCRIM No. 1201 to decide whether Rotkin intended to commit kidnapping of Adam R.

Pursuant to CALCRIM No. 1201, kidnapping of a child requires the prosecution to prove that defendant (1) used physical force to take and carry away an unresisting child; (2) moved the child a substantial distance (the "asportation" element); and (3) moved the child with an illegal intent or for an illegal purpose. As given, CALCRIM No. 1201's definition of "substantial distance" instructed the jury that it may consider other factors beyond actual distance, including "whether the movement increased the risk of physical or psychological harm, increased the danger of a foreseeable escape attempt, gave the attacker a greater opportunity to commit additional crimes, or decreased the likelihood of detection." The prosecutor requested a pinpoint instruction for the definition of "illegal purpose or with an illegal intent," that the crime in question "need not be directed at the kidnapping victim." The court provided the pinpoint instruction over defense counsel's objection.

B.    Analysis

Rotkin contends that the court had a sua sponte duty to modify the standard CALCRIM No. 1201 instruction. Specifically, Rotkin argues that the definition of "substantial distance" should have instructed the jury that,

11

in addition to the considerations set forth in the standard CALCRIM No. 1201 instruction, it may also consider whether the distance Adam R. was moved was "beyond that merely incidental to the commission of" an associated crime. The People first contend that Rotkin forfeited this challenge by failing to raise it during the discussion on jury instructions, but that the court's instruction on the attempted kidnapping of Adam R. was nonetheless proper. We address the merits of Rotkin's argument, as it goes to whether the court's instruction was a complete and correct statement of the law. (*People v. Singh* (2019) 42 Cal.App.5th 175, 183–184, fn. 3.)

A court has a sua sponte duty to instruct the jury on the essential elements of a charged offense. (*People v. Merritt* (2017) 2 Cal.5th 819, 824.) As the definition of "substantial distance" goes to the asportation element of kidnapping, we must decide whether that element was "essential" to Rotkin's charge for attempted kidnapping of Adam R. (*Ibid.*)

This question was squarely addressed in *People v. Cole* (1985) 165 Cal.App.3d 41 (*Cole*). In *Cole*, the defendant was convicted of attempted kidnapping where he entered a home, walked into the bedroom of the victim, put a knife to her neck, led her downstairs directly to the front door, and then fled. (*Id.* at pp. 46–48.) *Cole* concluded that there was substantial evidence to support the conviction. (*Id.* at p. 50.) It explained: "An attempt to commit a crime consists of (1) the specific intent to commit the crime, and (2) a direct but ineffectual act done toward its commission." (*Id.* at pp. 47–48.) It determined that the jury reasonably found defendant's forcing of the victim directly to the front door to show the defendant's intent to kidnap her, as well as a direct, unequivocal act toward kidnapping her. (*Id.* at pp. 49–50.) Importantly, *Cole* distinguished these elements of attempted kidnapping from the elements of completed kidnapping. For completed kidnapping, the

12

victim's movement must be substantial. (*Id.* at p. 50.) But for *attempted* kidnapping, the distance the victim was moved "is immaterial." (*Ibid.*) "[A]sportation simply is not an element of the offense." (*Ibid.*)

Similarly, in *People v. Fields* (1976) 56 Cal.App.3d 954, 956 (*Fields*), the defendant was convicted of attempted kidnapping after stopping his car beside the victim, grabbing her by the head and hair, and telling her to get into his vehicle. When the girl refused, the defendant drove off. (*Ibid.*) The defendant argued that his attempted kidnapping conviction should be reversed because his actions amounted to no more than battery. (*Ibid.*) *Fields* rejected the argument, again relying on the distinction between completed and attempted kidnapping. (*Id.* at p. 957.) In a completed kidnapping, "where asportation has been accomplished, the requisite movement for more than a slight distance can be measured with some precision." (*Ibid.*) But in an attempted kidnaping, "to require the prosecution to show more than a forcible attempt to move the victim in order to prove intent to move the victim a substantial distance, would be to read the crime of attempted kidnaping out of the law." (*Ibid.*)

Since *Cole* and *Fields*, it is well settled that asportation is not an element of attempted kidnapping. (4 Witkin, Cal. Criminal Law (4th ed. 2021) Crimes Against the Person, § 316 ["Asportation is not required"]; Levenson & Ricciardulli, Cal. Criminal Law: Crimes Against the Security of the Person (The Rutter Group 2020–2021) ¶ 6:60 ["Asportation is not element of attempted kidnapping"].) We thus conclude that modification to the instruction regarding what circumstances a jury may consider in determining asportation was unnecessary because asportation is not an element of attempted kidnapping.

13

Rotkin's argument to the contrary is unpersuasive because he only cites authority on jury instructions for *completed* kidnapping, not *attempted* kidnapping. For example, in *People v. Martinez* (1999) 20 Cal.4th 225, 237, the California Supreme Court concluded that for a *completed* kidnapping case involving an associated crime, "the jury should be instructed to consider whether the distance a victim was moved was incidental to the commission of that crime in determining the movement's substantiality." This direction from *Martinez* regarding the jury instructions for completed kidnapping is not applicable to the attempted kidnapping instructions in this case. In fact, *Martinez* supports the distinction that asportation is a required element of completed kidnapping, but not of attempted kidnapping. Upon determining that the facts of the case did not satisfy the asportation standard, *Martinez* modified the defendant's completed kidnapping conviction to attempted kidnapping. (*Id.* at p. 241.) Other courts have similarly modified convictions from completed to attempted kidnapping where the evidence of asportation is legally insufficient. (E.g., *People v. Daly* (1992) 8 Cal.App.4th 47, 57.)

In sum, we conclude that the court did not err in instructing the jury with the standard CALCRIM Nos. 460 and 1201 instructions for the attempted kidnapping of Adam R.[2]

### III.

### *Insufficient Evidence Arguments*

Rotkin makes two arguments regarding the sufficiency of evidence for necessary elements of his attempted kidnapping convictions. First, as to both Y.H. and Adam R., Rotkin argues that there was insufficient evidence that he attempted to move them a substantial distance. Second, as to Adam R.,

---

[2] Having determined no error, we need not address Rotkin's argument that he suffered prejudice.

Rotkin argues that there was insufficient evidence that he (1) attempted to move Adam R. for an illegal purpose or intent; or (2) attempted to take Adam R. away.

"To assess the evidence's sufficiency, we review the whole record to determine whether *any* rational trier of fact could have found the essential elements of the crime . . . beyond a reasonable doubt." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) "The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*Ibid.*) "In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence." (*Ibid.*) Reversal for insufficient evidence "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' " (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

A.     Additional Facts

The surveillance video showed that, around 11:03 a.m., Y.H. came out of B.L.'s house, holding Adam R. and walking towards an adjacent neighbor's house. Rotkin also came out of B.L.'s house, walked to Y.H., and appeared to hold and push her down the street and away from B.L.'s house. Y.H. tried to walk back towards the house, at which point Rotkin appeared to hold Y.H. in place and then push her again away from the house. When B.L. came outside, Rotkin and Y.H. moved back toward the house. When B.L. went inside, Rotkin appeared to be holding Y.H.'s hand, pulling her away from the house, and pointing in the direction away from the house. When B.L. exited her house again, Rotkin grabbed B.L. B.L. broke free and went back inside

15

her house, at which point Rotkin and Y.H. moved back toward the house. Once B.L. was inside, Rotkin appeared to push Y.H. onto the street and away from the house. Rotkin and Y.H. returned to the sidewalk and Rotkin appeared to be pushing Y.H. away from the house. Rotkin and Y.H. moved back into the street and Rotkin appeared to continue pushing Y.H. away from the house while Y.H. signaled to an oncoming vehicle.

B.     Analysis on Attempted Kidnapping of Y.H. and Adam R.

To support his position that there was insufficient evidence for the attempted kidnapping of either Y.H. or Adam R., Rotkin relies primarily on a juror letter and juror testimony presented at Rotkin's sentencing hearing, which detail the jurors' deliberation and thought processes on the attempted kidnapping charges. Statements from jurors that are submitted as proof of their subjective reasoning process, which can be neither corroborated nor disproved, are inadmissible to impeach a verdict under Evidence Code section 1150, subdivision (a). (*English v. Lin* (1994) 26 Cal.App.4th 1358, 1364, 1366.) As the juror letter and testimony was submitted by Rotkin as proof of their reasoning processes on the attempted kidnapping charges, it is inadmissible evidence that we do not consider here.

Beyond this inadmissible evidence, Rotkin again relies on authority involving *completed* kidnapping convictions to argue that there was insufficient evidence that he attempted to move Y.H. or Adam R. a substantial distance. For example, Rotkin cites to *In re Crumpton* (1973) 9 Cal.3d 463, 466 for its conclusion that the asportation element for aggravated kidnapping under section 209 was not met where the defendant robbed a service station and forced the attendant to walk around that station. These cases do not bear on the question of whether there was sufficient

16

evidence that Rotkin *attempted* to move either Y.H. or Adam R. a substantial distance.

We again find *Cole* and *Fields* on point.  In *Cole*, this court concluded that substantial evidence supported the attempted kidnapping conviction where the defendant entered a home, walked into the bedroom of the victim, put a knife to her neck, led her downstairs directly to the front door, and then fled.  (*Cole*, *supra*, 165 Cal.App.3d at pp. 46–48.)  In *Fields*, the appellate court affirmed the attempted kidnapping conviction because "[w]here, as here, a strange man seizes the person of a young girl on a residential street and orders her to get into a vehicle whose motor is running, the specific intent and the affirmative act required to constitute the crime of attempted kidnapping are adequately manifested."  (*Fields*, *supra*, 56 Cal.App.3d at p. 956.)

Here, the surveillance video showed Rotkin making several attempts to push Y.H. and Adam R. down the street and away from B.L.'s house, by holding Y.H. around the waist or pulling her by the hand.  These attempts included not only pushing her down the sidewalk, but pushing her onto the street.  The surveillance video showed Rotkin pushing Y.H. and Adam R. at least to the adjacent neighbor's house, which Officer Suguitan testified to be approximately 33 feet from B.L.'s house.  We thus conclude that there was sufficient evidence to support a reasonable determination by the jury that Rotkin attempted to move Y.H. and Adam R. a substantial distance.

C.    Analysis on Attempted Kidnapping of Adam R.

Rotkin also argues there was insufficient evidence on two other necessary elements for the attempted kidnapping of Adam R. under section 207, subdivision (e):  (1) an attempt to move Adam R. "for an illegal purpose or . . . intent;" and (2) an attempt to take Adam R. "away."

17

Rotkin contends that neither element is satisfied here because he was trying to move Adam R. to safety, back inside B.L.'s house. But this is not the only reasonable deduction that the jury could have made. As described above, the surveillance video showed Rotkin making several attempts to push Y.H. (while holding Adam R.) down the street and away from B.L.'s house. Officer Suguitan testified that he located Rotkin's vehicle down the street. Officer Trujillo's body-worn camera footage showed that, when asked to move out of the street while still holding onto Y.H., Rotkin responded: "My car is that way." Officer Peregrina's body-worn camera footage showed Rotkin holding a car key. From this evidence, the jury could have reasonably deduced that Rotkin attempted to move Adam R. to kidnap him (and Y.H.), and attempted to take Adam R. (and Y.H.) away in his car.

Rotkin also argues that the "illegal purpose or intent" element was not satisfied because Rotkin did not act with any illegal purpose or intent specifically towards Adam R. As explained above, we conclude that the evidence was sufficient to determine otherwise. But even if the evidence was only sufficient as to the attempted kidnapping of Y.H., it would still satisfy the "illegal purpose or intent" element as to Adam R. In *People v. Hill* (2000) 23 Cal.4th 853, 858, the California Supreme Court made clear that this element of child kidnapping is satisfied by "the intent to commit a crime," even if that crime is not directed at the child. We reject Rotkin's argument that *Hill* should no longer be deemed good law based on the statutory language in section 207. *Hill* is entirely consistent with that language, which requires an amount of force "to take and carry the child away a substantial distance for *an illegal purpose or with an illegal intent*." (§ 207, subd. (e), italics added.) It does not specify the crime associated with that purpose or intent. (*Ibid.*)

18

In sum, we conclude that there was sufficient evidence to support a reasonable determination by the jury that Rotkin attempted to move Adam R. for an "illegal purpose or intent" and attempted to take Adam R. "away," pursuant to section 207, subdivision (e).

## IV.

### *Decision on Necessary Elements Argument*

Lastly, Rotkin argues that his conviction for attempted kidnapping of Adam R. should be reversed because the jury did not decide the elements of (1) attempting to move Adam R. for an "illegal purpose or intent" or (2) attempting to take Adam R. "away." Rotkin contends that instead of deciding these necessary elements as required for due process, the jury improperly relied on its determination that Rotkin was guilty of the attempted kidnapping of Y.H.

Defendant's argument is premised entirely on the juror letter and testimony detailing the jurors' deliberation and thought processes on the attempted kidnapping charges. We do not consider this inadmissible evidence, for the reasons stated above.[3] With no proper support for his contention, and given that we must presume the jury followed their instructions in the absence of contrary evidence (*People v. Harris* (2005) 37 Cal.4th 310, 350), we reject the argument.[4]

### DISPOSITION

The judgment is affirmed.

---

[3] Having determined no error, we need not address Rotkin's argument that he suffered prejudice.

[4] Having concluded that Rotkin's specific challenges yield no error, we need not address Rotkin's argument that his convictions should be reversed for cumulative error.

_____

Seligman, J.*

WE CONCUR:

_____

Simons, Acting P. J.

_____

Needham, J.

A158747

---

* Judge of the Superior Court of Alameda County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.