[No. D016498. Fourth Dist., Div. One. Apr. 21, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
RAYMOND JAMES BRADLEY, Defendant and Appellant.

## COUNSEL

Athena Shudde, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons and Pat Zaharopoulos, Assistant Attorneys General, and Demetra P. Lewis, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**WORK, J.**—Raymond James Bradley appeals a judgment convicting him of kidnapping with the intent to commit rape (Pen. Code,[1] §§ 207, 208, subd. (d)), assault with the intent to commit rape (§ 220), and sexual battery (§ 243.4, subd. (a)). Bradley contends his slight movement of the victim cannot support a conviction of kidnapping as a matter of law; there was insufficient evidence to establish his intent to rape to support his kidnapping and assault convictions; he was improperly denied probation; and, section 654 mandates execution be stayed on his convictions for assault with the intent to commit rape and sexual battery. As we shall explain, we conclude Bradley's contentions to be without merit except that the trial court should have stayed execution on his conviction for sexual battery. Accordingly, the judgment is modified to stay execution on his sexual battery conviction and, as modified, the judgment is affirmed.

### FACTUAL AND PROCEDURAL BACKGROUND

On Friday evening, November 8, 1991, 16-year-old Margaret H. was at work at Swensen's Ice Cream & Eating Establishment in La Mesa. Sometime after 6 p.m., Margaret left the store and used the pay phone directly out front of Swensen's front door to call her boyfriend, Kyle. Bradley approached her from the rear, reached over her shoulder and pushed some phone buttons. Surprised, Margaret looked at Bradley and said: "Excuse me. Can I help you?" He stared back at her for about 20 seconds. He was wearing a dirty red plaid shirt, dirty denim jeans with holes, and a backpack over his shoulder. His hair and beard were unkempt. She noticed a short distance away a companion was watching. She repeated her question. At this point, he and his companion walked away.

Margaret returned to the store. However, a little later, she decided to call Kyle again from the outside pay phone. While she talked, facing Swensen's,

---

[1]All statutory references are to the Penal Code.

Bradley approached her and grabbed her phone hand. She cried "help" into the phone. He forced her to hang up the phone, grabbed her upper arm and forcibly walked her around the side of Swensen's towards the more dimly lighted dumpster area. Bradley's companion grabbed her other arm and assisted in the forced escort.

The dumpsters are located on the side of Swensen's, some 50 to 60 feet from the pay phone. The dumpsters are enclosed by a six-and-one-half-foot high block wall, with an area of approximately three hundred sixty square feet. At night, the lighting is very poor. A multiresidential complex some distance away provides incidental artificial light to the enclosed dumpster area.

As they entered the dumpster enclosure, the companion let go of her arm and hopped onto a closed dumpster while Bradley continued to hold her arm tightly. He called her a slut and whore, accusing her of leaving him for some other guy. She noticed it was the same person who had confronted her earlier. With his other hand, he pulled her hair back away from her neck, pushed her head back, and starting kissing her neck. She was too frightened to scream. A couple of times, he tried to kiss her on the mouth, but she kept turning away. Bradley's companion stated he would not mind getting a "piece of that," causing Bradley to retort: "Don't worry, I will." With his free hand, he caressed her underneath her shirt. He then removed his hand, placed it into her shorts, and caressed her within an inch of her vaginal area. Margaret felt his erection pressing against her back. Suddenly, car lights shined into the dumpster area, causing Bradley's companion to hop off the dumpster and Bradley to take his hand out of her shorts. Margaret kicked him in the shins, and both assailants fled.

Bradley was charged and convicted of count one, kidnapping with the intent to commit rape (§§ 207, 208, subd. (d)); count two, assault with the intent to commit rape (§ 220); and count three, sexual battery (§ 243.4, subd. (a)). At sentencing, the trial court noticed the probation officer's recommendations, the aggravating circumstances offered by the prosecution, and those in mitigation offered by the defense in assessing the feasibility for granting probation, and, if denied, in fixing sentence.[2] The trial court read into the record those circumstances which led the court to deny probation, and to

---

[2]The probation report noted Bradley had an extensive record of prior misdemeanor convictions dating back to 1975, including a charge of molesting his 10-year-old niece. The report noted his problem with alcohol and potential drug use. He often demonstrated mental instability. He had been granted probation 16 times since 1975, and violated all of them, either by new offenses or noncompliance with probation conditions. The probation report noted in mitigation Bradley unquestionably was suffering from some mental condition, and, despite the numerous prior convictions, this was his first felony. But, the report, as to

sentence on all three counts. The court believed Bradley was presumptively ineligible for probation, found no reason to rebut this presumption, and denied probation. It stated probation would have been denied anyway, based upon its independent discretion, due to the nature of the charge and Bradley's incessant failure to comply with past probations.

The court proceeded to sentence. The court found, in mitigation, Bradley suffered from a mental condition which may have reduced his culpability, and, the three convictions represented his first felonies. However, the court found the circumstances in aggravation more heavily weighted, noting: (1) Bradley engaged in violent conduct; (2) his criminality had increased from numerous prior misdemeanor convictions; (3) Bradley was on probation when he committed these present crimes; (4) Bradley's past performance on probation was poor; and (5) the victim was emotionally vulnerable. The trial court sentenced Bradley to the upper term for count 1, eleven years, and the middle terms for counts 2 and 3, four and three years, respectively—all three to be served concurrently.[3] Timely notice of appeal was filed.

## THERE WAS SUFFICIENT EVIDENCE TO SUPPORT ASPORTATION FOR THE CONVICTION OF KIDNAPPING WITH THE INTENT TO COMMIT RAPE

Bradley asserts his moving Margaret a mere 50 to 60 feet away from the pay phone in front of her place of employment to the dumpster area was not sufficient to support a conviction of kidnapping with the intent to commit rape under section 208, subdivision (d). Case law has established two standards for assessing sufficient movement, depending on whether the kidnapping is simple or aggravated. Aggravated kidnapping under section 209, whether for ransom, extortion, or robbery warrants the use of a two-pronged analysis directing the trier of fact to assess whether the movement was a substantial distance, and whether the movement substantially increased the risk of injury over and beyond those risks inherent in committing the underlying crime. (*People* v. *Daniels* (1969) 71 Cal.2d 1119, 1139-1140 [80 Cal.Rptr. 897, 459 P.2d 225, 43 A.L.R.3d 677]; *In re Crumpton* (1973) 9 Cal.3d 463, 466-467 [106 Cal.Rptr. 770, 507 P.2d 74];

---

aggravating circumstances, noted the crime involved a threat of great bodily harm, Margaret was particularly vulnerable, Bradley had engaged in violent behavior, he was already on probation at the time of this conviction, his performance on probation had been dismal, and, although it was his first felony, he had demonstrated an increasing escalation of criminality. The report noted his conviction for assault with the intent to commit rape (§ 220), rendered Bradley presumptively ineligible for probation, except in an unusual case, which was not found. The report recommended Bradley be denied probation and sentenced to eight years, the middle term sentence for count 1 for kidnapping with the intent to commit rape, with no term set for counts 2 and 3.

[3]Restitution was ordered, then waived. Appropriate credits of 194 days were deducted.

*People* v. *Stanworth* (1974) 11 Cal.3d 588, 597-598 [114 Cal.Rptr. 250, 522 P.2d 1058]; *In re Earley* (1975) 14 Cal.3d 122, 129 [120 Cal.Rptr. 881, 534 P.2d 721]; *People* v. *Daniels* (1988) 202 Cal.App.3d 671, 678-680 [248 Cal.Rptr. 753].) This two-pronged analysis has been rejected in assessing asportation for a simple kidnapping under section 207. (*People* v. *Stanworth, supra,* 11 Cal.3d at p. 596; *People* v. *Brown* (1974) 11 Cal.3d 784, 787 [114 Cal.Rptr. 426, 523 P.2d 226]; *People* v. *Caudillo* (1978) 21 Cal.3d 562, 574 [146 Cal.Rptr. 859, 580 P.2d 274].)

▮ The issue before us is whether, for the purpose of determining sufficient movement, kidnapping with the intent to commit rape should be equated with aggravated kidnapping or simple kidnapping.

Senate Bill No. 2079 (1989-1990 Reg. Sess.) revised section 208 by adding a new punishment of five, eight, or eleven years for kidnapping when accomplished with the intent to commit rape. (§ 208, subd. (d); Stats. 1990, ch. 1560, § 1.) Section 208 generally defines punishment for kidnapping committed under section 207, while kidnapping with the intent to commit robbery is found in its own section which restates the elements of kidnapping. (§ 209, subd. (b).) The underlying crimes of rape and robbery are both inherently dangerous felonies. However, we must presume the Legislature was aware of the case law distinctions between simple and aggravated kidnapping when they opted to place kidnapping with the intent to commit rape under section 208, and not section 209. (*Estate of McDill* (1975) 14 Cal.3d 831, 837-839 [122 Cal.Rptr. 754, 537 P.2d 874].) The original version of Senate Bill No. 2079 sought to establish a life sentence for kidnapping with the intent to rape, which was reduced to the five, eight, and eleven year determinate term on a compromise with the Governor.[4] (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 2079 (1989-1990 Reg. Sess.); letter dated Sept. 7, 1990, from Sen. Roberti to Gov. Deukmejian; *People* v. *Bryant* (1992) 10 Cal.App.4th 1584, 1600 [13 Cal.Rptr.2d 601].) The Legislature intended to not create a new kidnapping offense, but simply to increase the punishment when kidnapping was accomplished with the intent to commit rape or other illegal sexual activity. (Enrolled Bill Rep., Sen. Bill No. 2079 (1989-1990 Reg. Sess.) as amended July 7, 1990; *People* v. *Bryant, supra,* 10 Cal.App.4th at p. 1600.)

The possibility of a life sentence for aggravated kidnapping was a key concern to the Supreme Court in establishing a special test for movement. The court noted the drafters of the 1960 revision of the Model Penal Code found aggravated kidnapping convictions were often simply substitute

---

[4]Simple kidnapping holds a determinate term of three, five or eight years. (§ 208, subd. (a).)

convictions to rape or robbery, so a death sentence or life imprisonment could be imposed. This was often done as these states did not have such stiff penalties for rape or robbery. (*People* v. *Daniels, supra*, 71 Cal.2d at p. 1138.) Evidently, the more serious penalty of life imprisonment imposed in aggravated kidnapping is in large part responsible for the impetus to use the *Daniels* risk-related movement test. Therefore, since the Legislature added kidnapping with the intent to commit rape to section 208 and not section 209, and since the penalty is determinate and not life as found in aggravated kidnapping, we conclude kidnapping with the intent to commit rape warrants the same test for movement as in simple kidnapping. ▮ Thus, a movement which is neither slight nor trivial is sufficient for a conviction of kidnapping with intent to commit rape under section 208, subdivision (d). (*People* v. *Brown, supra*, 11 Cal.3d at p. 788; *People* v. *Stanworth, supra*, 11 Cal.3d at p. 601.)

▮ After having said this, we acknowledge distance, in and of itself, is not the only factor probative of asportation. Consideration must be given to the change in surroundings between the point of capture and destination. It was ruled trivial movement when a woman was moved throughout her house, then taken 40 to 75 feet *directly outside her house* (*People* v. *Brown, supra*, 11 Cal.3d at p. 789); for a woman to be dragged *within the same room* of a laundromat (*People* v. *Thornton* (1974) 11 Cal.3d 738, 767 [114 Cal.Rptr. 467, 523 P.2d 267], disapproved on other grounds in *People* v. *Flannel* (1979) 25 Cal.3d 668, 684, fn. 12 [160 Cal.Rptr. 84, 603 P.2d 1]); and, for a woman to be taken from an elevator to a storage room *on the same floor* of her apartment complex (*People* v. *Caudillo, supra*, 21 Cal.3d at pp. 573-574). It was insufficient movement to drag a woman 40 feet from her car *across the same parking structure* to a van (*People* v. *Daly* (1992) 8 Cal.App.4th 47, 57 [10 Cal.Rptr.2d 21]), while it was held substantial movement to take girls up a small hill from a car (*People* v. *Stanworth, supra*, 11 Cal.3d at p. 602) or to force a woman past 3 residences, onto the beach and under a pier for a distance of 200 feet (*People* v. *Stender* (1975) 47 Cal.App.3d 413, 422 [121 Cal.Rptr. 334]).

We acknowledge "[a]rbitrary boundaries established by buildings or other enclosures, ownership of property, fences, and other points of reference" vary in size and distance and, thus, the movement cannot be determined simply by reference to these boundaries. (*People* v. *Brown, supra*, 11 Cal.3d at p. 789, fn. 6.) This is true since the actual measurement of distance must be the key factor. But, as has been noted before, besides the measurement of distance, these boundaries which are traversed may become an additional factor to establish the substantiality of a movement. (*People* v. *Stender, supra*, 47 Cal.App.3d at p. 421.) To convert this concern for the crossing of

boundaries into a risk analysis, simply reinstates the *Daniels* test for simple kidnapping. (*People* v. *Caudillo, supra,* 21 Cal.3d at p. 574.) But, regardless of risk, the substantiality of a movement must be related to more than simply distance. A distance of 50 feet in the open desert is of far less importance to fulfilling the goal of a sexual perpetrator than 50 feet in the city where characteristics of location change much more quickly.

■ Margaret was moved some 50 to 60 feet, from the open street. She was forcibly led around a building, to the inside of a separate structure—the enclosed dumpster area. This is not a trivial or inconsequential movement, in light of the boundaries which were traversed over this distance and the unlit and secluded nature of the destination providing the necessary environment to commit the targeted crime without interruption or detection. For Margaret, the inherent danger from sexual attack in the secluded dumpster area was considerably more than in the public phone area. For this reason, we agree this movement was sufficiently substantial to support a conviction for simple kidnapping, and kidnapping with the intent to commit rape. (§§ 207, 208, subd. (d).)

### There Is Substantial Evidence to Support an Intent to Commit Rape

■ Bradley contends there was insufficient evidence to support the jury finding he had the specific intent to commit rape required for his convictions of assault with the intent to commit rape (§ 220) and kidnapping with the intent to commit rape (§§ 207, 208, subd. (d)). ■ This specific intent element is sufficiently met when the defendant sets out to "use whatever force is required to complete the sexual act against the will of the victim." (*People* v. *Greene* (1973) 34 Cal.App.3d 622, 648 [110 Cal.Rptr. 160].) "It is the state of mind of the defendant . . . which is in issue." (*Ibid.,* citing *People* v. *Roth* (1964) 228 Cal.App.2d 522, 532 [39 Cal.Rptr. 582].) In objectively assessing a defendant's state of mind during an encounter with a victim, the trier of fact may draw inferences from his conduct, including any words the defendant has spoken. "The question whether the intent existed is one for the jury to determine from the conduct of the defendant and the surrounding circumstances." (*People* v. *Greene, supra,* 34 Cal.App.3d at p. 649, citing *People* v. *Meichtry* (1951) 37 Cal.2d 385, 389 [231 P.2d 847].)

"A judgment will not be reversed unless upon no reasonable hypothesis whatsoever is there sufficient evidence to support the trier of fact's conclusion, and an appellate court will assume the existence of every fact in support of the judgment that can reasonably be deduced from the evidence." (*People* v. *Bard* (1968) 70 Cal.2d 3, 4-5 [73 Cal.Rptr. 547, 447 P.2d 939].)

■ The force used by Bradley was that amount required to overcome Margaret's will. Bradley grabbed Margaret's arm, forced her to hang up the phone, then, holding tightly to her arm, led her to the dumpster enclosure area. Throughout the whole encounter, Bradley kept a tight hold of her arm. ■ It is now well settled it need not be established the defendant employ all of his force, nor is the victim required to resist violently, or with all possible resistance. (*People* v. *Trotter* (1984) 160 Cal.App.3d 1217, 1222 [207 Cal.Rptr. 165]; *People* v. *Greene, supra,* 34 Cal.App.3d at p. 651, fn. 7.) The jury may look to the age, maturity, or experience of the victim to assist its finding of what amount of force is sufficient to overcome the victim's will to resist. ■ Margaret was 16 years old at the time of her encounter with Bradley. She attempted to scream, but was unable due to fright. Her lack of experience may well have contributed to her nonuse of force to resist Bradley's grip on her arm. No contradictory evidence was proffered suggesting Margaret willingly accompanied Bradley and his companion to the dumpster area. Substantial evidence supports the jury finding Bradley employed the force required to overcome Margaret's will.

In addition, the jury found Bradley intended to complete a sexual act against Margaret. When in this enclosed area, Bradley's companion stated he would not mind getting a piece of that, Bradley retorted: "Don't worry, I will." Bradley kissed her neck, tried to kiss her on the mouth, moved his free hand under her shirt to fondle her breasts while touching skin not covered by her bra, and moved this hand under her shorts targeting her vaginal area. During this time, he was pressing the front of his body and his erection against her back. There was ample objective evidence supporting the jury's finding Bradley intended to complete a sexual act during his encounter with Margaret, employing the force required to overcome her will, and, thus, had the requisite specific intent to commit rape.

### THE TRIAL COURT DID NOT ABUSE ITS DISCRETION BY DENYING PROBATION

■ Bradley contends the trial court abused its discretion by denying probation. He starts by arguing the sentences from counts 2 and 3, for his convictions of assault with intent to commit rape (§ 220) and sexual battery (§ 243.4, subd. (a)) should have been stayed under section 654,[5] and the remaining sentence on count 1, his conviction for kidnapping with the intent to commit rape (§§ 207, 208, subd. (d)), would not have, by itself,

---

[5]Section 654 states in pertinent part: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one . . . ."

triggered the statutory probation limitation under section 1203.065, subdivision (b).[6]

Section 654 does not bar multiple convictions for the same act, only multiple punishments. So, for example, enhancements may be based on convictions stayed under section 654. (*People* v. *Young* (1983) 146 Cal.App.3d 729, 736 [194 Cal.Rptr. 338].) Here, it is no different. Regardless of whether the concurrent sentences of counts 2 and 3 are stayed under section 654, those convictions are still relevant in triggering any statutory probation limitations. Therefore, Bradley's contention section 654 would limit the applicability of statutory probation ineligibility for his assault conviction (§ 220) is meritless.

Bradley's proposition that one who is convicted of assault with the intent to commit rape under section 220 should not be subject to the statutory limitations to probation (§ 1203.065, subd. (b)) because he also committed kidnapping, is meritless. To embrace Bradley's argument would reward him for his augmented culpability. Accordingly, he is fully subject to those probation limitations mandated by section 1203.065, subdivision (b).

■ The trial court is not required to state its reasons for not finding "unusual cases" to rebut the presumption against probation in section 1203.065, subdivision (b). (*People* v. *Lesnick* (1987) 189 Cal.App.3d 637, 644 [234 Cal.Rptr. 491].) If a defendant is convicted of assault with the intent to commit rape, sodomy, or oral copulation (§ 220), the trial court may grant probation only in unusual cases where the interests of justice would best be served if the person is granted probation. And, if the court grants probation, "the court shall specify on the record and shall enter on the minutes the circumstances indicating that the interests of justice would best be served by" probation. (§ 1203.065, subd. (b).) Thus, no statement of reasons or facts to support the denial of probation for Bradley's convictions was required.

### EXECUTION FOR THE ASSAULT CONVICTION WAS CORRECTLY NOT STAYED UNDER SECTION 654

■ In his above argument challenging the denial of probation, Bradley contended his convictions for assault with the intent to commit rape (§ 220) and sexual battery (§ 243.4, subd. (a)) should have been stayed under

---

[6]Section 1203.065, subdivision (b), states, in part: "Except in unusual cases where the interests of justice would best be served if the person is granted probation, probation shall not be granted to any person convicted of a violation of Section 220 for assault with intent to commit . . . rape . . . ."

section 654. Although section 654 does not mandate stay of execution for his conviction of count 2, assault with the intent to commit rape,[7] it does so for his conviction of count 3 for sexual battery.

A single act resulting in multiple convictions may not be multiply punished. It is the instance where one commits a series of acts resulting in multiple convictions which raises concern. Where a course of criminal conduct is found to be divisible into separate acts, they are treated as more than one act within the meaning of section 654, and each act may result in a separate punishment. (*People v. Beamon* (1973) 8 Cal.3d 625, 637 [105 Cal.Rptr. 681, 504 P.2d 905], citing *People v. Brown* (1958) 49 Cal.2d 577, 591 [320 P.2d 5].) Whether a course of conduct is divisible depends upon the intent and objective of the actor. Where all the offenses were incident to one objective, these acts are indivisible, and the defendant may only be punished for any one of the offenses. (*People v. Beamon, supra,* 8 Cal.3d at p. 637, citing *Neal v. State of California* (1960) 55 Cal.2d 11, 19 [9 Cal.Rptr. 607, 357 P.2d 839].) Wrapping up separate acts within a course of illegal sexual conduct under the broad label of sexual gratification is "too broad and amorphous" to determine applicability of section 654. (*People v. Perez* (1979) 23 Cal.3d 545, 552 [153 Cal.Rptr. 40, 591 P.2d 63].) The purpose of section 654 is to ensure punishment will be commensurate with one's culpability. (*Ibid.,* citing *Neal v. State of California, supra,* 55 Cal.2d at p. 20.) Allowing such a broad-based objective as "sexual gratification" to trigger section 654, could reward the wrongdoer who has a greater criminal ambition with a lesser punishment. (*People v. Perez, supra,* 23 Cal.3d at p. 552, citing *Seiterle v. Superior Court* (1962) 57 Cal.2d 397, 403-406 [20 Cal.Rptr. 1, 369 P.2d 697].) And, the fact certain acts are proximate in time is not determinate in finding an indivisible course of conduct. Multiple criminal objectives may divide those acts occurring closely together in time. (*People v. Harrison* (1989) 48 Cal.3d 321, 336 [256 Cal.Rptr. 401, 768 P.2d 1078].) So, convictions for both lewd and lascivious conduct for removal of clothes and rape were judged to be of one objective in accomplishing the rape (*People v. Perez, supra,* 23 Cal.3d at p. 553, citing *People v. Greer* (1947) 30 Cal.2d 589, 604 [184 P.2d 512]), while the acts resulting in convictions for lewd and lascivious conduct and oral copulation were ruled to be divisible, not combined within the same criminal objective (*People v. Perez, supra,* 23 Cal.3d at p. 553, citing *People v. Slobodion* (1948) 31 Cal.2d 555, 562 [191 P.2d 1]).

Here, Bradley's course of conduct included the forceful taking, forceful movement, and assault, all with the intent to commit rape. On the

---

[7]Neither counts one, two or three invoke the exceptions to section 654 for completed sexual crimes under section 667.6.

surface, his intent and objective could broadly be labeled sexual gratification. However, the movement of Margaret, leading to his kidnapping conviction, is an act separate from the assault within the dumpster area. To combine these acts into an indivisible course of conduct under one broad-based objective of Bradley's sexual gratification, would reward him for his greater criminal ambition. The acts resulting in his assault upon Margaret while in the dumpster, enhanced his culpability over those acts resulting in his kidnapping conviction, which only required he forcefully take and substantially move her with an intent to commit rape. We view his objective in moving Margaret as separate from his later objective in assaulting her, and, therefore, he may be punished for each of these convictions. The concurrent sentences for both count 1, for the upper term of eleven years,[8] and count 2, for the middle term of four years are affirmed. The acts leading to the conviction in count 3 for sexual battery (§ 243.4, subd. (a)), however, holds the same criminal objective as those acts leading to the conviction in count 2 for assault with intent to commit rape. For this reason, the three-year middle term imposed concurrently on count 3, the conviction for sexual battery (§ 243.4, subd. (a)), must be stayed.

## DISPOSITION

The judgment is modified to stay execution of the sentence imposed for sexual battery, and the superior court is directed to modify the abstract of judgment accordingly and forward it to the Department of Corrections. As modified, the judgment is affirmed.

Kremer, P. J., and Benke, J., concurred.

A petition for a rehearing was denied May 18, 1993, and appellant's petition for review by the Supreme Court was denied July 29, 1993.

---

[8]Bradley only collaterally challenged the imposition of the upper term in count one in his argument against the denial of probation. We, however, find the trial court properly read into the record those aggravating and mitigating circumstances it found relevant under California Rules of Court, rules 421 and 423, in making its decision to impose the upper term.