Filed 1/30/14  P. v. Taplin CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>GARRETT EDWARD TAPLIN,<br><br>    Defendant and Appellant. | G047672<br><br>(Super. Ct. No. 11NF1700)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, James Edward Rogan and M. Marc Kelly, Judges.  Affirmed.

Athena Shudde, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel and Meredith S. White, Deputy Attorneys General, for Plaintiff and Respondent.

In 2012, a jury convicted Garrett Edward Taplin of sexual penetration by a foreign object by force (Pen. Code, §§ 289, subd. (a), 801.1, subd. (a),[1] count 1); assault with intent to commit rape (§ 220, subd. (a), count 2); and child annoyance with a prior sex conviction (§ 647.6, subds. (a)(1) & (c)(2), count 3). At a bifurcated bench trial later that day, the trial court found true Taplin suffered a prior serious and violent felony conviction (§§ 667, subds. (a)(1), (d), & (e)(1), 1170.12, subds. (b), (c)(1), 667.71, subd. (a)), and suffered two prior prison terms (§ 667.5, subd. (b)). At a sentencing hearing the following month, the trial court denied Taplin's motion to strike his prior conviction pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 529-530. The trial court sentenced Taplin to 67 years to life in prison as follows: count 2-the upper term of six years doubled to 12 years plus a consecutive term of five years for the prison prior; and count 1-25 years to life doubled to 50 years to life. The court stayed the sentence on count 3 pursuant to section 654.

On appeal, Taplin argues his prosecution for counts 2 and 3 was barred by section 654's proscription against multiple prosecutions, there was insufficient evidence to support count 2, and the trial court erred in instructing the jury with a modified version of CALCRIM No. 1191. Finding none of the contentions have merit, we affirm the judgment.

FACTS

In March 1999, 14-year-old Irene A. (Irene) was leaving a party when she stopped to talk with Taplin, who was standing behind the fence of an adjacent yard. At some point during the conversation, Taplin reached through the fence, touched Irene's breast, stated, "'I'm going to fuck you, bitch. I'm going to fuck you[,]'" digitally penetrated her vagina, and had her touch his erect penis. Irene returned to the party and told a friend what had happened. A teacher helped Irene report the incident to the police.

---

[1] All further statutory references are to the Penal Code, unless otherwise indicated.

2

Over 10 years later, in December 2009, 17-year-old J. C. (J.) lived in Placentia with her mother and Taplin, her stepfather. One morning, J. and Taplin were alone in the house. J. was watching television in her bedroom when Taplin entered the room. Taplin "look[ed] at [her] funny," which gave her a "weird vibe" and made her uncomfortable. J. collected her clothes and cell phone, walked into the bathroom to take a shower, and locked the door. After using the toilet, but before showering, J. heard the doorknob wiggling and then saw the doorknob moving. Knowing it was Taplin, J. asked what he wanted. Taplin responded, "'Open the door so I can fuck you.'" J. used her cell phone to call her brother Jaspar and asked him to come get her because Taplin was trying to get into the bathroom. Taplin managed to open the locked door and J. saw a little black tool in his hand before she used her body weight to close the door and relock it. J. encountered "a little" resistance as she pushed the door close. Jaspar arrived approximately 15 minutes later and did not see Taplin in the home. Jaspar drove J. to the police station to report the crime.

Later, police officers searched the home and found Taplin's personal items, including his clothes hanging in a bedroom closet. J.'s mother informed the officers Taplin had resided in the home for two years, was on parole, and was a registered sex offender in Fullerton.

Taplin was arrested for failing to register as a sex offender (§ 290). In May 2010, Taplin pleaded guilty to violating sections 290, subdivision (b), and 290.018, subdivision (b) [failure to register as sex offender] and was sentenced to two years in prison.

Over eight months later, in January 2011, a complaint charged Taplin with assault with intent to commit rape (§ 220, subd. (a)), and child annoyance with a prior sex conviction (§ 647.6, subds. (a)(1) & (c)(2)). The charges arose from the 2009 incident involving J. In September 2011, the trial court granted the prosecutor's motion

3

to dismiss the case, and the prosecutor re-filed the case alleging counts 1, 2, and 3 in October 2012. Taplin entered a not-guilty plea and denied all the allegations.

Taplin filed a motion to dismiss counts 2 and 3, which allegedly occurred in 2009. He asserted prosecution was barred pursuant to section 654 and *Kellett v. Superior Court* (1966) 63 Cal.2d 822 (*Kellett*), because the 2009 charges stemmed from the same course of conduct as the May 2010 section 290 violation. Alternatively, Taplin moved to dismiss the information on the grounds the 12-month delay in filing the charges denied him his constitutional right to due process and a speedy trial. The prosecutor opposed the motion. The prosecutor argued *Kellett* did not apply in this case because counts 2 and 3 were committed at a different time and place than the section 290 offense. The prosecutor added Taplin failed to establish he was prejudiced by any delay in filing the charges or prosecuting the case. The trial court denied Taplin's motion to dismiss. Regarding multiple prosecution, the court concluded the 2009 offenses and the section 290 offense were committed at different times, did not involve the same course of conduct, and were not transactionally related. As to due process, the court determined Taplin failed to show prejudice and denied the motion without prejudice. The court denied Taplin's renewed motion to dismiss for an alleged due process violation because Taplin failed to establish actual prejudice.

The prosecutor filed a motion to consolidate the offense involving Irene with the offenses concerning J. As relevant here, defense counsel argued consolidation was prejudicial under Evidence Code section 352 because the cases were weak and they "bootstrap[]" each other. The parties agreed the same Evidence Code section 352 analysis was applicable to Evidence Code section 1108. As relevant here, the court noted the Irene offense was 10 years old but there were "a lot of similarities" between the offenses and they were cross-admissible.

4

At the close of the prosecutor's case-in-chief, Taplin moved to dismiss count 2 pursuant to section 1118.1, which the prosecutor opposed. The trial court denied the motion concluding there was sufficient evidence supporting each element of count 2.

During the hearing on jury instructions, the prosecutor requested a modified version of CALCRIM No. 1191, substituting the words "'beyond a reasonable doubt'" for "'preponderance of the evidence'" so the prior sexual offense evidence had to be proved beyond a reasonable doubt. Taplin objected to the instruction, arguing it applied to uncharged sex offenses and not charged offenses. He further argued, regardless of the modification, the instruction would confuse the jury as it suggested that if either of the charges was proven beyond a reasonable doubt, that charge could then be used to bolster evidence for the other charge when "each charge by itself needs to stand on its own beyond a reasonable doubt." The court overruled Taplin's objection, explaining CALCRIM No. 1191 was appropriate so long as it was modified properly, and that the court had performed the required balancing under Evidence Code section 352 when determining whether the evidence was cross-admissible.

The trial court instructed the jury with a modified version of CALCRIM No. 1191 as follows: "The People presented evidence that the defendant committed the crimes of sexual penetration by a foreign object by force, assault with intent to commit rape, and child annoyance. These crimes are defined for you in these instructions. [¶] If you decide that the defendant committed a charged offense, you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to have the requisite specific intent for other charged crimes, and based on that decision, also conclude that the defendant was likely to and did have the requisite specific intent for other charged offenses. [¶] If you conclude that the defendant committed a charged offense, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of any of the other charged offenses. The People must still prove each element of every charge beyond

5

a reasonable doubt. Do not consider this evidence for any other purpose except for the limited purpose of determining the specific intent of the defendant in certain charged offenses."

DISCUSSION

*I. Multiple Prosecutions*

Relying on section 654 and *Kellett, supra,* 63 Cal.2d 822, Taplin argues the trial court erred in denying his motion to dismiss counts 2 and 3. He claims counts 2 and 3 should have been joined with the May 2010 section 290 for the following reasons: the offenses are intertwined as they occurred at the same time, they were committed by the same individual, they were transactionally related and part of the same course of conduct, and there was some overlap in evidence. We disagree.

"On appeal, we review factual determinations under the deferential substantial evidence test, viewing the evidence in the light most favorable to the People. [Citation.] We review de novo the legal question of whether section 654 applies. [Citation.]" (*People v. Valli* (2010) 187 Cal.App.4th 786, 794 (*Valli*).)

Section 654, subdivision (a), states, "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. *An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other.*" (§ 654, subd. (a), italics added.)

With regard to the multiple prosecution prong of section 654, our Supreme Court stated, "The rule against multiple prosecutions is a procedural safeguard against harassment . . . ." (*Kellett, supra,* 63 Cal.2d at p. 825.) In *Kellett*, the Supreme Court explained the rationale for joinder of closely related offenses: (1) protection from the harassment of having repeated trials until the prosecution is satisfied with the punishment; and (2) avoidance of unnecessary repetition of evidence and the consequent

6

costs in time and money. (*Id.* at pp. 825-826.) The court concluded: "If needless harassment and the waste of public funds are to be avoided, some acts that are divisible for the purpose of punishment must be regarded as being too interrelated to permit their being prosecuted successively. . . . When, as here, the prosecution is or should be aware of more than one offense in which the same act or course of conduct plays a significant part, all such offenses must be prosecuted in a single proceeding unless joinder is prohibited or severance permitted for good cause. Failure to unite all such offenses will result in a bar to subsequent prosecution of any offense omitted if the initial proceedings culminate in either acquittal or conviction and sentence." (*Id.* at p. 827.)

Whether the *Kellett* rule applies must be determined on a case-by-case basis. (*Valli, supra,* 187 Cal.App.4th at p. 797.) Appellate courts have adopted two tests to determine a course of conduct for purposes of multiple prosecution. (*Ibid.*) One line of cases finds *Kellett* does not apply where the offenses are committed at separate times and locations, unless together they constitute one transaction. (*Ibid.*; cf. *People v. Britt* (2004) 32 Cal.4th 944, 954-955 [barring separate prosecution of sex offender who failed to register move in two counties because they constituted one act].) The other line of cases views *Kellett* as imposing an evidentiary test requiring consideration of the "totality of the facts and whether separate proofs were required for the different offenses." (*Valli, supra,* 187 Cal.App.4th at p. 798, citing *People v. Flint* (1975) 51 Cal.App.3d 333.) Since Taplin's multiple prosecution claim fails both tests, we need not decide which to apply.

A. *Separate Time and Location*

Taplin argues a section 290 violation is a continuing offense until registration occurs and thus the offense occurred at the same time and place as counts 2 and 3, making them one course of conduct within the scope of *Kellett* and mandating their joinder. We disagree.

No overlap in the timing and location of two crimes suggests *Kellett* does not apply and multiple prosecutions are permitted. (*Valli, supra,* 187 Cal.App.4th at p. 796.) The same time and location test also requires the offenses be transactionally related and not just joinable, before simultaneous prosecution is required. (*Ibid*.)

A violation of section 290 is a continuing offense. (*Wright v. Superior Court* (1997) 15 Cal.4th 521, 525.) Our Supreme Court has stated, "when the law imposes an affirmative obligation to act, the violation is *complete* at the first instance the elements are met. [Although] [i]t is nevertheless not *completed* as long as the obligation remains unfulfilled." (*Id.* at p. 526.)

Although it could be concluded the section 290 offense occurred at the same time and place as counts 2 and 3 because it is a continuing offense, we find the record does not establish the requisite transactional link between the offenses to support the *Kellett* rule's applicability. (*Valli, supra,* 187 Cal.App.4th at p. 796.) Taplin violated section 290 when he first moved into the residence with J. and her mother and failed to register. True, the offense continued for two years until he was arrested, but it was complete at the first instance he violated the statute two years earlier. To conclude Taplin's violation of section 290 and two years later his commission of counts 2 and 3 constituted one transaction defies common sense and runs contrary to the purpose of the *Kellett* rule. Therefore, counts 2 and 3 are not based on the same underlying facts as the section 290 violation and cannot be considered the same course of conduct for purposes of section 654's ban on multiple prosecutions.

B. *Evidentiary Test*

Taplin asserts joinder was required because the offenses involved the same offender and evidence used to prove the section 290 violation was discovered during the investigation of counts 2 and 3. Not so.

8

"The evidentiary test . . . requires more than a trivial overlap of the evidence. Simply using facts from the first prosecution in the subsequent prosecution does not trigger application of *Kellett*." (*Valli, supra,* 187 Cal.App.4th at p. 799.) *People v. Hurtado* (1977) 67 Cal.App.3d 633 (*Hurtado*) is instructive.

In *Hurtado, supra,* 67 Cal.App.3d at p. 637, defendant's plea to driving under the influence of alcohol did not bar prosecution for narcotics charges, based on heroin found when his vehicle was stopped. Despite the close-in-time discovery of the heroin and defendant's arrest for driving under the influence, the evidence was found to be "sufficiently distinct." (*Ibid.*) The *Hurtado* court determined such a "trivial overlap of the evidence" did not mandate joinder under section 654. (*Ibid.*)

During their investigation of the assault, officers determined Taplin lived in the home from clothing found in a bedroom closet and other personal items. Around this time, J.'s mother informed officers Taplin had been residing in the home for two years, was on parole, and was a registered sex offender in a neighboring city. Based on this evidence, Taplin was convicted and sentenced for violating section 290. The evidence concerning the section 290 offense was immaterial to Taplin's commission of and conviction for counts 2 and 3, which required J. to testify concerning the details of what happened on the day of the incident. Accordingly, there was no overlap of evidence. (*Hurtado, supra*, 67 Cal.App.3d at p. 637.) Counts 2 and 3 did not arise from the same course of conduct as the section 290 violation, and the evidentiary test did not require they be joined and prosecuted together.

In the alternative, Taplin argues his constitutional right to due process was violated by the delay in prosecuting him for counts 2 and 3. Again, we disagree.

The right to a speedy trial attaches with the filing of the accusatory pleading or arrest, whichever is first. (*Serna v. Superior Court* (1985) 40 Cal.3d 239, 245.) A defendant claiming his due process rights were violated by pre-accusation delay must establish prejudice as it is not presumed. (*People v. Abel* (2012) 53 Cal.4th 891,

9

908-909 (*Abel*).) A defendant must establish "the loss of a material witness or other missing evidence, or fading memory caused by the lapse of time[]" resulted in prejudice. (*Ibid*.) A claim of prejudice may not be overstated, speculative, or meritless. (*People v. Nelson* (2008) 43 Cal.4th 1242, 1251.) If a defendant fails to establish prejudice, we need not determine whether the delay in charging the defendant was justified. (*Abel, supra,* 53 Cal.4th at p. 909.)

Here, Taplin has failed to establish he was prejudiced by the pre-accusation delay. Taplin merely asserts "the delayed prosecution of counts 2 and 3 can only have been attributable to the prosecution's desire to interfere with [his] freedom . . . ." As Taplin failed to point to any specific facts establishing he was prejudiced, we conclude his claim is meritless.

## II. *Sufficiency of the Evidence-Count 2*

Taplin argues insufficient evidence supports his conviction on count 2 because there was no evidence he intended to rape J. and that he assaulted her. We disagree.

"In reviewing a criminal conviction challenged as lacking evidentiary support, "'the court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citation.] The same standard of review applies to cases in which the prosecution relies mainly on circumstantial evidence [citation] . . . . An appellate court must accept logical inferences that the jury might have drawn from the circumstantial evidence. [Citation.]" (*People v. Maury* (2003) 30 Cal.4th 342, 396 (*Maury*).

"'"The essential element of [assault with intent to commit rape] is the intent to commit the act against the will of the complainant. The offense is complete if at any moment during the assault the accused intends to use whatever force may be required.'"

10

[Citation.] "'[I]f there is evidence of the former intent and acts attendant to the execution of that intent, the abandonment of that intent before consummation of the act will not erase the felonious nature of the assault.'" [Citation.]" (*Maury, supra,* 30 Cal.4th at pp. 399-400.)

*A. Intent*

Taplin argues there was insufficient evidence to prove he intended to rape J. He asserts the evidence only showed he intended to engage in consensual sex and that he ceased in his advance when she closed the bathroom door. Nonsense.

"This specific intent element is sufficiently met when the defendant sets out to 'use whatever force is required to complete the sexual act against the will of the victim.' [Citation.] 'It is the state of mind of the defendant . . . which is in issue.' [Citations.] In objectively assessing a defendant's state of mind during an encounter with a victim, the trier of fact may draw inferences from his conduct, including any words the defendant has spoken. 'The question whether the intent existed is one for the jury to determine from the conduct of the defendant and the surrounding circumstances.' [Citations.]" (*People v. Bradley* (1993) 15 Cal.App.4th 1144, 1154, overruled on other grounds in *People v. Rayford* (1994) 9 Cal.4th 1, 21.)

Here, there was sufficient evidence to conclude Taplin intended to rape J. The evidence at trial established that Taplin walked into J.'s bedroom and looked at her in such a manner that unsettled J., and she took her cell phone and locked herself in the bathroom. J. heard and saw the bathroom doorknob jiggling, and she asked Taplin what he wanted. Taplin replied, "'Open the door so I can fuck you.'" When J. did not open the door, Taplin used a small black tool to pick the lock and open the door. J. used her body weight to slam the bathroom door shut. J. testified she encountered "a little" more resistance than normal when she put her body against the door to prevent Taplin from entering.

11

Based on this evidence, the jury could reasonably conclude Taplin intended to rape his stepdaughter J. as he pursued her from her bedroom to the bathroom and gained entry to the bathroom with a tool. Taplin's statement he wanted to "fuck" his stepdaughter and his conduct of picking the lock are sufficient evidence for the jury to conclude he intended to rape her. Taplin claims he was merely trying to engage in consensual sex with his stepdaughter and highlights what he did not do to consummate the act, but his strange look, crude language, use of a burglary tool, and his attempt to forcefully enter the bathroom negate his specious claim. We will not substitute our judgment for that of the jury's when the jury's verdict is supported by substantial evidence.

Additionally, that Taplin abandoned his quest to rape J. when J. resisted and called her brother does "'not erase the felonious nature of the assault.'" (*Maury, supra,* 30 Cal.4th at p. 400.) Finally, the jury heard evidence Taplin sexually assaulted Irene, and the jury could properly rely on that evidence in determining whether Taplin intended to sexually assault J. (*People v. Villatoro* (2012) 54 Cal.4th 1152, 1164 (*Villatoro*).) Therefore, we conclude there was sufficient evidence for a reasonable trier of fact to find Taplin intended to commit nonconsensual sex with J. and intended to use whatever force would be needed to enter the bathroom and complete the offense. (*Maury, supra,* 30 Cal.4th at p. 396.)

B. *Assault*

Taplin argues there was no evidence he had the present ability to commit an act that by its nature would directly and probably result in the application of force to J. because he did not have the means to strike. Again, we disagree.

We find *People v. Chance* (2008) 44 Cal.4th 1164 (*Chance*), instructive. In that case, defendant was convicted for assaulting an officer with a firearm although no bullet was in the firing chamber and defendant would have had to pull back a slide mechanism before the weapon could be fired. (*Id.* at pp. 1168-1169.) The *Chance* court

12

stated, the "present ability element of assault . . . is satisfied when 'a defendant has attained the means and location to strike immediately.' [Citation.] In this context, however, 'immediately' does not mean 'instantaneously.' It simply means that the defendant must have the ability to inflict injury on the present occasion." (*Chance*, *supra,* 44 Cal.4th at p. 1168.) The court added, "[A]n assault may be committed even if the defendant is several steps away from actually inflicting injury, or if the victim is in a protected position so that injury would not be 'immediate,' in the strictest sense of that term." (*Chance*, *supra,* 44 Cal.4th at p. 1168.)

Here, there was sufficient evidence for the jury to reasonably conclude Taplin had the present ability to commit an act that by its nature would directly and probably result in the application of force to J. The evidence established that after Taplin told J. to open the bathroom door because he wanted to "fuck" her, Taplin used a tool to open the bathroom door. Taplin concedes he performed these acts. He claims though, "He needed to push the door open so the next 'movement would, at least to all appearance, complete the battery.'" J. provided that evidence when she testified she encountered "a little" more resistance than normal when she put her body against the door to prevent Taplin from entering. (*Chance*, *supra,* 44 Cal.4th at p. 1168 [fact intended victim takes effective steps to avoid injury has never been held to negate present ability].)

In unlocking the bathroom door and attempting to push the door open, Taplin attained the means and location to immediately commit a sexual battery on J. Although one step remained—completely entering the bathroom—before Taplin could have committed the battery, our case law does not establish a next-step test but considers whether the actor had the "ability to inflict injury on the present occassion." (*Chance, supra,* 44 Cal.4th at p. 1168.) Based on the entire record, the jury could have reasonably concluded Taplin had the present ability to perform an act that by its nature would directly and probably result in the application of force to J.

13

*III.  CALCRIM No. 1191*

Taplin argues the trial court erred when it instructed the jury with a modified version of CALCRIM No. 1191 because propensity evidence is limited to uncharged offenses and the instruction violated due process.  Again, we disagree.

Evidence of an uncharged offense is generally inadmissible to prove criminal disposition but may be admissible to prove some fact other than criminal disposition.  (Evid. Code, § 1101, subds. (a) & (b).)  Additionally, Evidence Code section 1108, subdivision (a), states, "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by [Evidence Code] [s]ection 1101, if the evidence is not inadmissible pursuant to [Evidence Code] [s]ection 352."

Evidence Code section 352 authorizes the trial court to "exclude evidence if its probative value is substantially outweighed by the probability" its admission will create a substantial danger of undue prejudice.  For purposes of Evidence Code section 352, "prejudice" means "'evidence that uniquely tends to evoke an emotional bias against a party as an individual, while having only slight probative value with regard to the issues.  [Citation.]'"  (*People v. Heard* (2003) 31 Cal.4th 946, 976.)

In *Villatoro, supra,* 54 Cal.4th at page 1164, our Supreme Court held: "[W]e conclude nothing in the language of [Evidence Code] section 1108 restricts its application to uncharged offenses.  Indeed, the clear purpose of [Evidence Code] section 1108 is to permit the jury's consideration of evidence of a defendant's propensity to commit sexual offenses.  'The propensity to commit sexual offenses is not a common attribute among the general public.  Therefore, evidence that a particular defendant has such a propensity is especially probative and should be considered by the trier of fact when determining the credibility of a victim's testimony.'  [Citations.]  '[C]ase law clearly shows that evidence that [a defendant] committed other sex offenses is at least circumstantially *relevant* to the issue of his disposition or propensity to commit these

14

offenses.' [Citations.] In light of this clear purpose, we perceive no reason why the Legislature would exclude charged sexual offenses from [Evidence Code] section 1108's purview, and no indication that it did so in either the text of [Evidence Code] section 1108 or its legislative history. Whether an offense is charged or uncharged in the current prosecution does not affect in any way its relevance as propensity evidence. Indeed, [Evidence Code] section 1108's legislative history explains that "'admission *and consideration* of evidence of other sexual offenses to show character or disposition would be no longer treated as intrinsically prejudicial or impermissible.'" [Citations.]"

Taplin acknowledges the modified instruction here is "substantially similar" to the instruction in *Villatoro* and we must follow the *Villatoro* court's reasoning to the extent it supports that aspect of the instruction given here. He raises the issue to preserve it for further review. Taplin is correct that we are bound to follow California Supreme Court precedent pursuant to *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455, in concluding the trial court did not err by instructing the jurors they may consider proven similar charged sex offenses as evidence of his propensity to commit other charged offenses

Relying on *Villatoro, supra,* 54 Cal.4th at pages 1163-1164, Taplin asserts that before a trial court instructs the jury with CALCRIM No. 1191 where there are only charged offenses the court must perform an Evidence Code section 352 analysis. We agree.

Here, the trial court performed the required balancing under Evidence Code section 352 and concluded that although the Irene offense was 10 years old, the offenses were similar. Contrary to Taplin's claim otherwise, the offenses were not "radically different." Taplin knew both of the minor victims and approached them where they would be surprised by his advances. He told both young victims he was going to "fuck them." And he acted to carry out his threats, in Irene's case sexually assaulting her. Thus, the offenses were substantially similar.

15

Additionally, admission of the offenses was not unduly prejudicial. (*People v. Harris* (1998) 60 Cal.App.4th 727, 737-742 [providing test for assessing admissibility of evidence under Evidence Code section 1108 and 352].) Neither incident was more inflammatory than the other, neither incident consumed an undue amount of time, and neither incident would confuse the jury. As the jury was considering *charged* offenses, there was no risk the jury would punish Taplin for uncharged conduct. Finally, although the incident with Irene was 10 years old, courts have found previous sexual offenses up to 30 years old not to be so remote in time as to preclude admission. (*People v. Branch* (2001) 91 Cal.App.4th 274, 284-285 [30 year gap between offenses was not remote and significant similarities balanced out remoteness].)

Finally, Taplin seems to claim the instruction was erroneous because it did not require the jury to consider the offenses in chronological order. He cites to no authority to support his claim, and we have found none.

## DISPOSITION

The judgment is affirmed.

O'LEARY, P. J.

WE CONCUR:

RYLAARSDAM, J.

MOORE, J.

16