Filed 1/22/15  P. v. Stuart CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B256555 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA374453) |
| v. | |
| PERRY STUART, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of the County of Los Angeles, Drew E. Edwards, Judge.  Affirmed.

Vanessa Place, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, Timothy M. Weiner, Deputy Attorney General, for Plaintiff and Respondent.

# INTRODUCTION

Defendant and appellant Perry Stuart (defendant) was convicted of assault with the intent to commit rape, a felony (Pen. Code, § 220, subd. (a)[1]) (count 2), kidnapping to commit a felony (§ 209, subd. (b)(1)) (count 3), and sexual battery by restraint (§ 243.4, subd. (a)) (count 4). On appeal, defendant contends that his sentence on count 2 should be stayed pursuant to section 654 because he was sentenced on count 3. We affirm the judgment.

# BACKGROUND

## A. Factual Background

### 1. Prosecution Evidence

Defendant called Charlene S., an exotic dancer, and asked her to dance at a private party that night. Charlene followed the directions to the location defendant provided, and when she arrived, defendant met her at her car. Charlene did not know defendant or recognize his number, so she remained in her locked car and she asked defendant how he knew her. Defendant gave the name of a mutual acquaintance, which reassured her. Charlene exited her car, and defendant led her down a long driveway, indicating it was the way to the party.

Defendant then put a gun to Charlene's back and told her, "Bitch get in the van." The distance from where Charlene was located when she felt the gun on her back to where the van was located was about 15 feet. Defendant opened the sliding door to the van, and Charlene could see that the van had only front seats. The van did not have any back seats; the back of the van "was open space." Once in the van, defendant told

---

[1]     All statutory citations are to the Penal Code unless otherwise noted.

Charlene to lie on her stomach in the back of the van, and she saw that there were sheets wrapped around all of the windows.

Charlene repeatedly pleaded with defendant not "to do this." Defendant placed the gun down. As Charlene lay on her stomach, she turned to look behind her and saw defendant "playing with his penis" trying to obtain an erection, and also saw a backpack that had "some type of jelly" in it. Defendant then put his hand on Charlene's buttocks. In response, Charlene turned around and began to fight with defendant. Charlene managed to take possession of the gun, pointed it at defendant, and pulled the trigger. The gun, however, did not fire because, according to Charlene, there was no magazine in it.

Defendant took the gun back and hit Charlene in the head with it. During the fight, defendant hit, bit, scratched, and choked Charlene. Charlene located her keys, and she sprayed the attached bottle of mace at defendant and the mace went "everywhere" in the van. Both she and defendant were unable to breathe, and after Charlene pleaded with defendant, he opened a van window to allow them to breath.

Charlene then decided it was in her best interests to change tactics by attempting to gain defendant's trust. Charlene convinced defendant to take her inside his home where they could both drink some water. As defendant was opening the door to his home, Charlene ran. Defendant chased her, but she flagged down a passing car and "jumped" into it. The passengers of the car immediately called 911, but before the police arrived, Charlene saw defendant drive away in the van.

Over the next several days, defendant called Charlene multiple times. Defendant told her that he was never going to kill her, and that he "always liked" her. Charlene recorded one of the conversations, and the recording was played for the jury. During this conversation, Charlene asked defendant why he attempted to rape her, and he replied, "You wouldn't give me a chance." Defendant admitted that he put a gun to Charlene's back, but claimed he was only trying to scare her.

3

## 2. *Defendant's Evidence*

Defendant testified that the first time he ever saw Charlene was at his preliminary hearing, and denied ever biting Charlene, attempting to rape her, or that it was his voice on the audio recording of the telephone conversation with Charlene. He said he never owned a gun, his van had always had back and middle row of seats, and he never had curtains in the van.

## B. Procedural Background

The District Attorney of Los Angeles County filed an amended information charging defendant with forcible rape in violation of section 261, subdivision (a)(2) (count 1); assault with the intent to commit rape or other acts of sexual assault in violation of section 220, subdivision (a) (count 2); and kidnapping to commit rape in violation of section 209, subdivision (b)(1) (count 3). The District Attorney alleged in count 1 that defendant committed the crime against Yvonne W., and the District Attorney alleged in counts 2 and 3 that defendant committed the crimes on a separate date than the crime alleged in count 1, and the crimes were committed against Charlene. The District Attorney alleged as to count 1 that defendant personally used a dangerous or deadly weapon or firearm within the meaning of section 667.61, subdivision (b), and as to counts 2 and 3 that defendant used a firearm within the meaning of section 12022.53, subdivision (b).

Following trial, the jury found defendant guilty on counts 2 and 3, and found the firearm allegations true. The trial court declared a mistrial on count 1. Pursuant to a plea deal, the amended information was further amended to include sexual battery by restraint in violation of section 243.4, subdivision (a) (count 4); defendant pleaded no contest to count 4; and count 1 was dismissed.

The trial court sentenced defendant to state prison for a life term with the possibility of parole, plus 10 years for the firearm allegation, on count 3. Defendant was also sentenced concurrently for 4 years plus 10 years for the firearm allegation on count

4

2, and 4 years on count 4. The trial court awarded defendant custody credit, and ordered him to pay various fees, fines and penalties. Defendant filed a timely notice of appeal.

## DISCUSSION

Defendant contends that his sentence on count 2— assault with the intent to commit rape or other acts of sexual assault—should be stayed pursuant to section 654. We disagree.

### A. Standard of Review

The applicability of section 654 is a question of fact for the trial court, which is vested with broad latitude in making its determination. (*People v. Ortiz* (2012) 208 Cal.App.4th 1354, 1377-1378.) We review the trial court's determination for substantial evidence. We do so in a light most favorable to the respondent, and we presume the existence of every fact that reasonably could be deduced from the evidence. (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.)

### B. Applicable Law

Section 654, subdivision (a) provides in pertinent part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." Section 654 prohibits only multiple punishment, not multiple convictions, for the same act. (*People v. Britt* (2004) 32 Cal.4th 944, 950; *People v. Harrison* (1989) 48 Cal.3d 321, 335.)

"'Section 654 has been applied not only where there was but one "act" in the ordinary sense . . . but also where a course of conduct violated more than one statute and the problem was whether it comprised a divisible transaction which could be punished under more than one statute within the meaning of section 654.' [Citation.]" (*Neal v. State of California* (1960) 55 Cal.2d 11, 19, overruled on other grounds as stated in

5

*People v. Sanders* (2012) 55 Cal.4th 731, 742.) To determine "'[w]hether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.' [Citation.] . . . [C]ases have sometimes found separate objectives when the objectives were either (1) consecutive even if similar or (2) different even if simultaneous. In those cases, multiple punishment was permitted. [Citation.]" (*People v. Britt*, *supra*, 32 Cal.4th at pp. 951-952.)

Section 654 is applicable "in those instances wherein the accused entertained a principal objective to which other objectives, if any, were merely incidental." (*People v. Beamon* (1973) 8 Cal.3d 625, 639, fn. omitted.) However, "a course of conduct divisible in time, although directed to one objective, may give rise to multiple violations and punishment." (*Id.* at p. 639, fn. 11.)

Aggravated kidnapping occurs where a defendant kidnaps or carries away any individual to commit rape. (§ 209, subd. (b)(1).) "To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant intended to commit [rape]; [¶] 2. Acting with that intent, the defendant took, held, or detained another person by using force or by instilling a reasonable fear; [¶] 3. Using that force or fear, the defendant moved the other person [or made the other person move] a substantial distance; [¶] 4. The other person was moved or made to move a distance beyond that merely incidental to the commission of a [rape]; [¶] 5. When that movement began, the defendant already intended to commit [rape]; [¶] [and] 6. The other person did not consent to the movement[.] [¶] . . . [¶] As used here, *substantial distance* means more than a slight or trivial distance. The movement must have increased the risk of [physical or psychological] harm to the person beyond that necessarily present in the [rape]." (CALCRIM No. 1203.)

"To prove that the defendant is guilty of [assault with the intent to commit rape or other acts of sexual assault] the People must prove that: [¶] 1. The defendant did an act that by its nature would directly and probably result in the application of force to a

person; [¶] 2. The defendant did that act willfully; [¶] 3. When the defendant acted, [he] was aware of facts that would lead a reasonable person to realize that [his] act by its nature would directly and probably result in the application of force to someone; [¶] 4. When the defendant acted, [he] had the present ability to apply force to a person; [¶] [and] 5. When the defendant acted, [he] intended to commit [the crimes of rape or other acts of sexual assault]." (CALCRIM No. 890; § 220, subd. (a)(1).) Assault with the intent to rape "'is complete if at any moment during the assault the accused intends to use whatever force may be required'" to commit the rape, forcible sodomy or forcible oral copulation. (*People v. Maury* (2003) 30 Cal.4th 342, 399-400.)

### C.    Analysis

In closing argument, the prosecutor argued several separate acts that constituted assault, all of which occurred after Charlene was forced into the van about 15 feet from where she was located when defendant first placed a gun to her back. These acts included defendant placing his "hand on [her] buttocks," "choking her," "biting" her, "scratch[ing] her" neck, and "hitting her on the head with a gun." There was not one "act" argued to the jury that constituted both the aggravated kidnapping and the aggravated assault.

Even if the separate acts constituted a course of conduct, with the intent to commit rape or sexually abuse Charlene, section 654 does not preclude punishment for both the aggravated kidnapping and the assault with the intent to commit rape or other acts of sexual assault. (*People v. Bradley* (1993) 15 Cal.App.4th 1144, 1157-1158, overruled on other grounds in *People v. Rayford* (1994) 9 Cal.4th 1, 21.) In *People v. Bradley*, the defendant was convicted of both aggravated kidnapping and assault with the intent to rape. (*Id*. at pp. 1149-1150.) The victim was using a pay phone when the defendant approached her, forced her to hang up the telephone, grabbed her arm, and forcibly walked her to a dumpster about 50 to 60 feet away. When they entered the dumpster enclosure, the defendant, with one hand, grabbed the victim's hair, pulled her head back, and started kissing her neck. With his other hand, the defendant began fondling the

7

victim under her shirt and shorts. Car lights suddenly shined into the dumpster and the defendant fled. (*Id*. at p. 1150.) The court rejected the defendant's claim that section 654 precluded punishment for both the aggravated kidnapping and the assault with the intent to rape, stating, "Here, [the defendant's] course of conduct included the forceful taking, forceful movement, and assault, all with the intent to commit rape. On the surface, his intent and objective could broadly be labeled sexual gratification. However, the movement of [the victim], leading to his kidnapping conviction, is an act separate from the assault within the dumpster area. To combine these acts into an indivisible course of conduct under one broad-based objective of [the defendant's] sexual gratification, would reward him for his greater criminal ambition. The acts resulting in his assault upon [the victim] while in the dumpster, enhanced his culpability over those acts resulting in his kidnapping conviction, which only required he forcefully take and substantially move her with an intent to commit rape. We view his objective in moving [the victim] as separate from his later objective in assaulting her, and, therefore, he may be punished for each of these convictions." (*Id*. at pp. 1157-1158.) Similarly, here, defendant's movement of Charlene from an open area into the van was an act separate from the assault within the van, and to view those separate acts as an indivisible course of conduct "would reward [defendant] for his greater criminal ambition." (*Id*. at p. 1158.)

As the Attorney General correctly argues, "[T]o adopt the view that section 654 precludes punishment for both [defendant's] acts of kidnapping and assault would mean that, once a defendant has committed one act of violence against a victim in pursuit of a criminal objective, he may thereafter with impunity commit any number of additional acts of violence to overcome a victim's resistance, so long as [the defendant] does not commit the exact same offense. Clearly section 654 does not intend such a result." Defendant's sentence on count 2 should not be stayed pursuant to section 654.

8

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


MOSK, J.


We concur:


TURNER, P. J.


GOODMAN, J.[*]

---

[*]      Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.